SIRAGUSA ET AL. *v.* THE PEOPLE OF PORTO RICO ET AL.

APPEAL from the District Court of Arecibo.

No. 724.—Decided June 24, 1912.

TIBURONES LAGOON OR CHANNEL—CAÑO DE TIBURONES—SWAMP LANDS.—The fact that all the lands which formed part of the original Tiburones lagoon or channel (*Caño de Tiburones*) belong to the People of Porto Rico does not

signify that it must follow that because said lagoon or channel formerly covered a large tract of land lying between Arecibo and Barceloneta or because the waters have receded or because·a considerable portion of the swampy lands of said locality were formerly covered by the waters of the lagoon or channel all the boggy or swampy lands now in said locality necessarily belong to the People of Porto Rico as a part of the lands which formed said lagoon.

ID.—CONSTRUCTION.—The word "channel" (*caño*) as applied to the Tiburones channel of Arecibo must not be construed to mean that it only embraces the present width of the channel or stream of water which is approximately seven or eight meters.

ID.—IDENTIFICATION OF PROPERTY—TITLE.—After examining the evidence in the case at bar the court held that the titles submitted by the plaintiffs for the purpose of establishing their ownership of the properties which they claim do not show clearly nor has it been proved by means of other evidence that said titles refer to the lands in litigation.

EJECTMENT—AREA OF LANDS CLAIMED IN EJECTMENT.—In an action of ejectment it is an indispensable requisite that the plaintiff specify in a precise manner the superficial area of the property which he seeks to recover. In the case at bar the court held that the defendants had not complied with such requisite inasmuch as they had not specified with exactness the precise dimensions of the lands which they seek to recover and which form part of a larger estate of which they are in possession.

ID.—IDENTIFICATION OF PROPERTY—BOUNDARIES.—Upon examining the evidence introduced in this case this court held that the southern, eastern, and western boundaries of the property in litigation have not been alleged or proved in a definite, clear, and precise manner. The Tiburones channel is given as the southern boundary, but no specific length or distance determining the part of the channel to which the estate extends has been alleged because the width or length of the channel has not been clearly and definitely proven. The eastern boundary has not been shown in such manner as to permit the determination of the length of the estate on the east. The western boundary alleged by the plaintiffs was contradicted by the owner of the contiguous estate who testified that his property does not wholly bound the estate in litigation on the west, but bounds on the west the estate of which the plaintiffs have possession.

The facts are stated in the opinion.

Messrs. *Eduardo Acuña* and *Emigdio S. Ginorio* for appellants.

Messrs. *Foster V. Brown, Attorney General,* and *J. H. Brown* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

The complaint in this case, among other things, sets forth that the complainants were the only and universal heirs of Antonio Roses Bisbal; that on May 27, 1889, by means of

a public deed, the said Antonio Roses Bisbal acquired the
real property No. 855 by purchase from Ramona Balseiro
Macías, the description of the property being as follows:
A rural property located in the municipal limits of Arecibo,
ward of Islote, which name it bears, locality of *la Burrada,*
which measures 390 acres of land, more or less, composed
of pasture and cortadera, including a dwelling house, and
bounded on the north by the seacoast, on the south by the
Caño de Tiburones, on the east by José Manuel Alvarez, and
on the west by lands of Gregorio Pastoriza. That by suces-
sive conveyances and transmission of title the complainants
acquired, from José Manuel Alvarez y Alvarez, the land
situated directly to the east of property No. 855 heretofore
described, the description of the second rural property being
as follows: A piece of property in the ward of Islote, in
the municipal limits of Arecibo, consisting of 156 acres and
a fraction, being bounded on the north by the road to Palmas
Altas, on the south by the Caño de Tiburones, on the east
by lands of Joaquin de Santiago, and on the west by other
lands of Antonio Roses, namely, the property heretofore
described, this second piece of property bearing the number
1504.

The complainants also set up that they had acquired a
third piece of property bearing number 1644, the description
of which is as follows: A rural property situated in the
ward of Islote, of the municipal limits of Arecibo, consist-
ing of 150 acres, being bounded on the north and east by
lands of Nicolasa Colón; on the south by the Caño de Tibu-
rones, and on the west by lands of the predecessor in title
of the complainants, namely, Antonio Roses Bisbal, being the
property No. 1504 above described. The complaint goes on
to say that these three pieces of property are contiguous
and form a single piece of land with the following descrip-
tion: A rural property located in the ward of Islote, place
of *la Burrada,* of the municipal limits of Arecibo, composed
of 696.60 acres, being bounded on the north by the seacoast,

the road to Palmas Altas or Barceloneta and the land of Nicolasa Colón; on the south by the Caño de Tiburones; on the west by lands of Gregorio Pastoriza.

The eighth averment of the complaint is that the complainants are owners of the aforesaid property and have possessed it quietly, pacifically and entirely, with good faith and a just title, for an uninterrupted period of more than 15 years up to June 4, 1910.

The ninth paragraph sets forth that on June 4, 1910, the *fiscal* of the District Court of Arecibo, without any title, entered upon the property of the complainants, accompanied by various persons, and, after having, with various landmarks, traced a line which, running in a direction from east to west, approximately divides the property in half, seized, in the name of The People of Porto Rico, the portion of land included between such line and the Caño de Tiburones, and, ejecting therefrom the plaintiffs, put Winceslao Borda in possession of the same in representation of The People of Porto Rico, ordering those present not to disturb him in such possession.

The complainants then aver that a few days after the said June 4, various workmen, under the orders of Wenceslao Borda, set up a fence of wood and wire on the line traced by the *fiscal,* thereby completely dividing the property of the complainants and preventing them from using and occupying the lands included between the fence and the Caño de Tiburones; that the said portion of land from which they have been ejected has a area of 435 acres and a fraction of solid land, partly cultivated and the rest being mountains and pasture, and on which pasture various oxen were grazing at the time of the said ejectment, the boundaries of such despoiled portion being as follows: On the north the rest of the land of the complainants, from which the fence previously referred to separates the property; on the east lands of Basilio Reyes, formerly of Juan José Tirado and before him of Juan Bautisto Salicrup; on the south the Caño

de Tiburones, and on the west the said caño and lands of Gregorio Pastoriza. The defendants denied all the essential averments of the complaint.

The court below, after setting out the foregoing facts, in its opinion maintains that the lands covered by the waters of the Caño de Tiburones, or lake, belonged to the public domain, so long as it is not proved that they have become part of the property in the manner which the law provides. The opinion goes on to maintain that according to the rules published in April, 1884, royal lands consist of all vacant property without legitimate owners or which had never become private property; that by virtue of the eighth article of the Treaty of Peace all the property which then belonged to the Crown of Spain passed to the United States, and that, in turn, the United States ceded these properties to The People of Porto Rico.

With these facts as premises, the court then proceeds to examine whether any part of the lands which the complainants are claiming was included within the perimeter of the lands belonging to the lake or Caño de Tiburones. The court believed from the evidence that the greater part of the 435 acres sought to be recovered was not solid, but was wet or humid soil. The evidence, in fact, clearly shows that a great portion of the land of the complainants is swamp and contains cortadero and poyales, it being admitted that cortadera and poyales are stalks or weeds which grow only in swamp lands, or in wet or humid places. The court, in its opinion says, that the proof adduced by the complainants and defendants in the present case convinced it that the lands in litigation—if not all, at least the greater part of them—belonged to The People of Porto Rico; that all the lands inundated by the waters of the caño are of the public domain, and the proof of the defendants shows that the fence was located on the dividing line between the inundated land and the dry or solid ground.

The judge cites the opinion of the Federal Court in the

case of *Marcelis* v. *Graham,* 5 Federal Reports, 493, to show the nature of the Caño de Tiburónes and its location, and that all the inundated lands were property of The People of Porto Rico.

We do not think it is necessary to follow the court in all its reasoning. It is clearly shown that any lands which are shown to have formed a part of the original lake or caño belong to The People of Porto Rico; but we do not think it follows that because there was anciently a lake or swamp which covered a large region between Arecibo and Barceloneta, and that some of these waters have receded, or because a good part of the swamp lands in that region were once covered by the waters of the canal or lake, that the lands belonging to The People of Porto Rico necessarily include any and every bit of swamp or wet lands which are found in the neighborhood. The canal, at times, may have overflowed and may have continued to overflow, depending upon the state of the tide, and the result may have been that some lands that were solid before may have become swamp, and in such lands cortadera and poyales might have grown; nor does it satisfy our minds, as shown by the proof, that some engineer, in 1908, or theretofore, made a survey and a plan of the lands that were included in the Caño de Tiburones. Such plan or estimate was never shown to be anything more than the opinion of the engineer who made the survey. No ancient map or plan was produced which showed the exact extent of the lake.

We think, however, that the judgment in this case will have to be affirmed on other grounds, and part of our considerations are in harmony with the opinion of the court below. The complainants showed that they were in possession of at least a part of the land which they claim, and that they had a part of it under cultivation for a number of years; but they have not satisfied our minds that the titles which they have produced in this case include or cover the lands which they are claiming. There seems to be some-

thing of a probability that their lands extended south of the fence which the defendants set up, but the titles and the proof do not prove, with the certainty required in a suit of this nature, the exact southerly limit of such lands which they are claiming. There are witnesses who say that the southern limit is the actual canal or stream of the so-called Caño de Tiburones, a stream which is said to be about seven or eight meters in width, but this alleged proof, given mainly by complainants' witnesses, is largely a matter of assertion. The witnesses say that the land extended as far as the stream; they do not show how they derive their knowledge, nor do they show that the description of the property contained in the titles actually included the land down to the stream. We agree with the trial court that the word "caño" is not limited to the present stream of seven or eight meters.

Furthermore, there is no definite, clear, allegation of the eastern boundary of the complainants' land. Property No. 1644, the easternmost property of the three pieces that formed the whole, places Nicolasa Colón on the north and east, and there was no evidence to show exactly how far Nicolasa Colón was from Pastoriza on the west. The proof shows, and the defendants admit, that Gregorio Pastoriza is the western limit of the lands of the complainants as described by their titles inscribed in the registry. They also admit that the northern boundary of properties Nos. 855 and 1504 are well placed, but they contest the location of property No. 1644, and maintain that the complainants have not definitely located property No. 1644 with respect to the other two pieces of property. The description shows that property 1644 was contiguous to the other property of Roses, but where and how contiguous is very vague. However, even supposing it to be contiguous, or in partial alignment to the other two pieces of property, yet its actual eastern extent is not shown. None of the descriptions show the form of the particular pieces of property constituting the entire land

claimed, whether it be a rectangular or other quadrilateral, and no attempt was made to show the shape of the entire property. None of the inscriptions showed the length of any one of the lines forming the sides of any one of the pieces of property claimed. For all that the proof shows, the whole property may extend indefinitely to the east and all of it be situated to the north of the fence placed by the defendants.

There is also some difficulty as to the western limit of the property alleged to be withheld by the defendants. The complainants say that they are bounded on the western side by Gregorio Pastoriza, but the latter took the stand and gave strong evidence tending to show that no part of his land was to the west of the alleged despoiled property of complainants, but that his land lay only to the west of the land of which the complainants were still in possession. The complainants did not successfully and definitely locate the western boundary, and, if Gregorio Pastoriza is the western limit, the lands of the complainants cannot extend as far south as they maintain.

Furthermore, the complainants have offered us little or nothing to prove the number of acres that still in fact remain to them and which lie to the north of the fence. A survey or an examination might show the exact number of acres of land remaining, along with their actual boundaries. Without such proof the idea that the lands of complainants might have a wide eastern extension is not excluded.

There was, as we have intimated, evidence tending to show that complainants were in possession of at least a part of the land they claim. If they had brought an opportune possessory action it is possible that they might have prevailed therein, but in an ejectment suit such as this it is incumbent on the plaintiff to clearly identify the land which he claims, and then to establish by proof his title to the same. This, in our opinion, the plaintiff has failed to do and he cannot recover.

The judgment must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.