## TIGLAO *v.* INSULAR GOVERNMENT OF THE PHILIPPINE ISLANDS.

ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE
PHILIPPINE ISLANDS.

No. 37.   Argued November 1, 1909.—Decided January 3, 1910.

Writ of error and not appeal is the proper method to bring up to this
   court a judgment of the Supreme Court of the Philippine Islands in
   a case affecting title to land in Court of Land Registration. *Cariño
   v. Insular Government,* 212 U. S. 449.
In this case the grant involved was made without authority by subordinate officials, was void *ab initio,* and conveyed no title to the
   original grantee or those holding under him.
A man cannot take advantage of his ignorance of the law, and where
   all that is done to give him a title is insufficient on its face, the
   grantee is chargeable with knowledge, does not hold in good faith,
   and in such a case prescription does not run from the date of the
   instrument under which he claims.

THE facts are stated in the opinion.

*Mr. Aldis B. Browne, Mr. Alexander Britton, Mr. J. H. Blount* and *Mr. Evans Browne* for plaintiff in error and appellant:

The concession of 1873 made by the Municipal Board of Mabalacat did transmit to plaintiff in error's grantor certain rights. Book 4, Title 12, Law 1 of the compilation of Spanish Colonial Laws printed in 1828 in House Doc. No. 121, 20th Cong., 2d Sess., p. 38; see also 3 Philippines, 540; Law 8, Book 4, Title 12, Laws of the Indies permitting applications for land grants in townships where there is a court. As to occupation ripening into title, see Solicitor General's brief in *Cariño Case,* 212 U. S. 449.

*Evangelista* v. *Bascos*, 5 Philippines, 255, which holds otherwise to contention of plaintiff in error is unsound. Possession under the circumstances of this case confers title by prescription as against the State. See *Cariño* v. *Insular Government*, 212 U. S. 449; Book 4, Title 12, Law 14, Recopilacion de Leyes de las Indias; 3d Partida, Title XXIX, Law 18; § 1957, Spanish Civ. Code War Department, transl. 1899; Mortgage Law of 1893. The Philippine Government Act of July 1, 1902, was meant to carry out in good faith Art. VIII of the treaty of 1898, and all legislation of the United States concerning the Philippines indicates a policy to protect all property rights in land, complete or inchoate, existing at the time of the treaty and held in good faith. As to good faith, see § 1950, Spanish Civil Code for Cuba, Porto Rico and the Philippines. In this case good faith cannot be questioned. See 3 Philippines, 540; and royal order of 1862, cited in 5 Philippines, 548.

The original grantor took under a valid grant and cultivated the land in dispute and some interest or title must have vested by his occupation. In appropriating this land for military purposes, supposing that it was for this land, the authorities made a mistake and that fact cannot affect the owner's interest.

Under the laws for town government as stated in 1 Census Report Phil. Ils. 365, disposition of pueblo lands when approved by the Parish Priest was sufficient to protect title.

*The Solicitor General* and *Mr. Paul Charlton*, Law Officer, Bureau of Insular Affairs, for defendants in error and appellees:

This court has no jurisdiction of the appeal. Writ of error is the proper method of bringing to this court a case instituted in the Court of Land Registration for registration of ownership. *Cariño* v. *Insular Government*, 212 U. S. 449, 456. The case being here only upon writ of error, the facts must be accepted as found below.

This land was royal domain when the Gobernadorcillo and

Principales of the pueblo of Mabalacat attempted to convey it to Laeson.  There is no evidence of proprietorship of any part of the land by the pueblo of Mabalacat.  Under Spanish law a pueblo did not become the owner of any part of the royal domain unless special grant was made to it and the extent and boundaries of the grant were specially designated by the proper granting authority, *United States* v. *Santa Fe*, 165 U. S. 675, 691; *United States* v. *Sandoval*, 167 U. S. 278; and even when the lands were specially set apart for a pueblo the fee remained in the King.

Law 1 of Book 4, Title 12, of the Laws of the Indies did not authorize the grant of 1873 to Lacson.  That law relates only to grants to new settlers from such lands as have been assigned for the new settlement as a whole by the viceroy, governor of the colony or other representative of the King.  It cannot authorize a grant attempted long after a town had come into existence and without any connection with its foundation or early settlement.  The attempted grant to Lacson was made 200 years or more after the island of Luzon was made a Spanish colony and an indefinite time after the town of Mabalacat arose.  There is no proof that Mabalacat is a town of Spanish foundation or that it ever had any grant of land from which such distribution could be made to individual settlers under Law 1 of Title 12.  This law does not contemplate or authorize a grant of 1,200 hectares (some 3,000 acres) such as was made to Lacson.  If Law 1, Title 12, can apply at all to this case, it was necessary that the grant to Lacson should be made by the "viceroy or governor thereto authorized by" the King.  It did not authorize a grant by the gobernadorcillo and principales.  The fact that the Gobernadorcillo and Principales of Mabalacat assumed to make the grant to Lacson can raise no presumption of their authority to make it.  *Hayes* v. *United States*, 170 U. S. 637, 647; *Chavez* v. *United States*, 175 U. S. 552, 558.  That the viceroy or governor of the colony was the proper granting authority under Spanish law, see *United States* v. *Arredondo*,

6 Pet. 691; *United States* v. *Percheman,* 7 Pet. 50; *United States* v. *Clarke,* 8 Pet. 436; *United States* v. *Segui,* 10 Pet. 306; *United States* v. *Chaires,* 10 Pet. 308; *United States* v. *Seton,* 10 Pet. 309; *United States* v. *Sibbald,* 10 Pet. 313; *United States* v. *Rodman,* 15 Pet. 130; *United States* v. *Acosta,* 1 How. 24; *United States* v. *Peralta,* 19 How. 343; *United States* v. *Workman,* 1 Wall. 745; *Serrano* v. *United States,* 5 Wall. 451.

Law 8 of Book 4, Title 12, of the Laws of the Indies did not authorize the Gobernadorcillo and Principales of Mabalacat to make the grant to Lacson. This law relates only to grants where the royal audiencia sits. That was only at Manila, until February 26, 1886, when a second audiencia was established at Cebu. Law 8 is also limited to grants of land in a ciudad (city) or a villa. Mabalacat, as a pueblo, was neither a ciudad nor a villa. Law 8 requires that the grant be signed by the viceroy or president and deputies "in the presence of the clerk of the cabildo (council)." The grant to Lacson had no such signature. This law also requires that the grant under it "be recorded in the book of the council." The grant to Lacson is not shown to have been recorded anywhere. Concerning the effect of absence of record of a grant, see *United States* v. *Teschmaker,* 22 How. 392, 405; *Luco* v. *United States,* 23 How. 515, 543; *Palmer* v. *United States,* 24 How. 125, 128; *Peralta* v. *United States,* 3 Wall. 434, 439; *Hays* v. *United States,* 175 U. S. 248, 257, 258; *United States* v. *Ortiz,* 176 U. S. 422, 426.

If either Law 1 or Law 8 authorized town officials to grant royal lands, it was superseded by the royal decrees of October 15, 1754, and December 4, 1786,—at least as to agricultural lands such as comprised the attempted grant to Lacson. These decrees provided a systematic method of disposing of royal lands, and the decree of 1786 gave exclusive jurisdiction in such matters to the intendants or perhaps to the viceroy or other governor of the colony as head of the treasury or personal representative of the King.

Appellant acquired no title by prescription. The grant to Lacson in 1873 did not give just title, for the Gobernadorcillo and Principales had no authority to make the grant; and possession cannot be deemed to be in good faith when it is under a grant void by operation of law. *Hayes* v. *United States,* 170 U. S. 637, 650.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes by writ of error and appeal from a judgment of the Supreme Court of the Philippine Islands, affirming a judgment of the Court of Land Registration, which denied registration of a tract of land. It is admitted that the facts as found by the two courts may be assumed to be true, *Reavis* v. *Fianza, ante,* p. 16; but apart from the concurrence of the courts below the proper proceeding in a case of this kind is by writ of error, and therefore the appeal is dismissed. *Cariño* v. *Insular Government,* 212 U. S. 449. So much being established, the grounds on which the plaintiff in error can claim title may be stated in a few words. On July 13, 1873, the Gobernadorcillo and Principales of the town of Mabalacat in the Province of Pampanga, Luzon, executed an instrument, marked O. K. by the Parish Priest, purporting to grant the land, with qualifications not needing to be noticed, to one Rafael Lacson, under whom the plaintiff in error claims. Possession was held until 1885 and since then has been abandoned. The land was public land. The questions brought here were whether the original grant was valid, or, if not, whether the possession that followed it without interruption for ten years and more conferred title by prescription under the royal decree of June 25, 1880. This decree states the rule of prescription in the usual terms of the civil law. It confers ownership on those who shall establish that they have possessed the lands in question for the requisite time under just title and in good faith. See Civil Code. Arts. 1952, 1953, 1957.

As we understand the later briefs filed in behalf of the plaintiff in error, the vain attempt to justify the grant under the Recopilacion de Leyes de las Indias, Book 4, Title 12, Law 1, is given up, and therefore we shall spend no time upon that. There is, however, an effort to support it under a decree of January 4, 1813. 1 Reynolds, Spanish & Mexican Land Laws, 83. This was a scheme of the Cortes to reduce public and crown lands to private ownership, after reserving one-half for the public debt. When certain preliminaries had been accomplished, as to which we have no information, the other half was to be allotted in the first place to retired officers and soldiers who had served in the present war, &c., as a patriotic reward. Of the remaining land there was to be given, gratuitously and by lot, to every resident of the respective towns who applied, a tract, under certain limitations. The proceedings on these grants were to be had by the constitutional common councils, and the provincial deputations were to approve them. Although this decree purported to apply to crown lands 'in the provinces beyond the sea' as well as to those in the peninsula, it would seem, on the face of it, to have been intended for Spaniards, and to have had but doubtful reference to the natives of conquered territory.

But there are other answers to the suggestion that are free from doubt. The decree has been said to have been repealed in the following year. *United States* v. *Clarke*, 8 Peters, 436, 455. Hall, Mexican Law, 48. But compare *United States* v. *Vallejo*, 1 Black, 541. *Hayes* v. *United States*, 170 U. S. 637, 653, 654. But even if it be assumed, as it is by the argument for the plaintiff in error, that either that or later legislation to similar effect instituted a working system in the Philippines, a large assumption, it is admitted that the conditions of the supposed gratuity were not fulfilled. Our attention has not been called to any law giving authority to the ill-defined body that attempted to make the grant. The land was not distributed by lot, and the essential requirement of approval

by a higher authority was wholly neglected. In view of the admission to which we have referred we find it unnecessary to follow the learned and able argument of the Solicitor-General. There is a hint, to be sure, that the grant may be presumed to have satisfied native custom and may be sustained upon that ground. But such a notion would be a mongrel offspring of Spanish law and ignorance, and no reason is given for making the presumption other than a guess. Unauthorized grants of public lands by subordinate officials seem to have been a noticeable feature in other Spanish colonies. *Whitney* v. *United States*, 181 U. S. 104, 114, 115. The real object of the reference to the decree of 1813 is to found a claim of prescription by showing a just title for the possession which is proved to have been maintained for ten years.

Lacson, the original grantee, held the land until 1881, when he conveyed it to Pedro Carrillo and his wife. Possession was abandoned in 1885 without further change of title. Therefore the only 'just title' to which the possession can be referred is the original grant. The phrase *justo titulo* is explained to mean a title such as to transfer the property, Schmidt, Civil Law of Spain and Mexico, 289, 290; see Partidas, l. 18, T. 29, P. 3; or as it is defined in the Civil Code of a few years later than the decree of 1880, "that which legally suffices to transfer the ownership or property right, the prescription of which is in question." § 1952. Of course this does not mean that the *titulo* must have been effective in the particular case, for then prescription would be unnecessary. We assume, for instance, that if a private person in possession of crown lands, seeming to be the owner, executed a formally valid conveyance under which his grantee held, supposing his title good, possession for ten years might create an indisputable right. But if the public facts known by the grantee showed that the conveyance to him was void, we understand that it would not constitute a starting point for the running of time, and that the grantee's actual belief

would not help his case. . Indeed, in such a case he would not be regarded as holding in good faith, within the requirement of the decree, because a man is not allowed to take advantage of his ignorance of law. The subject is fully expounded in *Hayes* v. *United States,* 170 U. S. 637, 650 *et seq.*

All that was done to give Lacson a lawful title was insufficient on its face. Therefore, on the facts known to him he was chargeable with knowledge that he had acquired no legal rights, and it was impossible that the period of prescription should begin to run from the date of the instrument under which he. claimed. The possession of Carrillo and his successors, after the conveyance to him in 1881, was not maintained for ten. years, and therefore the claim of the plaintiff in error must fail.

                                        *Judgment affirmed.*