## GALLUP v. CAMMACK.

### (Circuit Court of Appeals, Fifth Circuit. February 7, 1916.)

### No. 2777.

1. ADVERSE POSSESSION ☞34, 44—CHARACTER OF POSSESSION—EXCLUSIVENESS AND CONTINUITY.

Under Rev. St. Tex. 1911, art. 5675, providing that any person having a right of action for the recovery of land against another having peaceable and adverse possession thereof, cultivating, using, or enjoying it, shall institute his suit therefor within 10 years after his cause of action shall have accrued and not afterwards, the occupation which will give title by adverse possession must be exclusive and continuous.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 136, 226–231; Dec. Dig. ☞34, 44.]

2. ADVERSE POSSESSION ☞114—CHARACTER OF POSSESSION—ENCROACHMENTS.

Rev. St. Tex. 1911, art. 5675, require actions to recover land from another having peaceable and adverse possession thereof, cultivating, using, or enjoying it, to be brought within 10 years. Article 5676 provides that the peaceable and adverse possession contemplated in the preceding article, as against the person having the right of action, shall be construed to embrace not more than 160 acres, including the improvements or the number of acres actually inclosed. Plaintiff in 1902 purchased 160 acres of land in the C. survey and thereon built his house and appurtenances. Prior to his purchase there had been an encroachment over the unlocated boundary line between the C. survey and an adjoining unoccupied section of from one to two acres, cultivated, upon which had been erected a wagon shed, with a roof, but with uninclosed sides. Plaintiff in 1903 moved on his land, and cultivated his own land and about an acre and a half to two acres in the adjoining section, corresponding practically to the former encroachment. In 1903, and again in 1907, he moved away from his land, and while away no one lived in his house, but during all of the time he cultivated his own land and the encroachment, except in 1910, and in that year he planted 12 to 15 fruit trees on the encroachment, in extending an orchard on the C. survey, and tended them, and also stored tools in the wagon shed and pastured hogs on the unoccupied section. At different times he also pastured hogs and cut posts and wood and pickets there. *Held*, that there was a mere encroachment, and not such a continuous adverse possession as to give the owner of the unoccupied section notice that he was claiming adversely any part of the section, or to authorize him to recover 160 acres of land from such section.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. ☞114.]

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Action by S. B. Cammack against David L. Gallup. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

Cammack, defendant in error, sued Gallup, plaintiff in error, to recover 160 acres out of B. B., B. & C. Railway Company, section 1, block 1, containing 640 acres. Gallup filed his answer containing the statutory plea of not guilty and a cross-action, praying for judgment for the title and possession of the whole section of land.

Gallup is the owner of the record paper title to the whole section. Cammack based his right to recover on the 10-year statute of limitations of the state of Texas, being articles 5675 and 5676 of the Revised Statutes of Texas of 1911.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The case was tried before a jury, and a verdict and judgment rendered in favor of Cammack for the 160 acres claimed by him, and in favor of Gallup for the remainder of the section. From this judgment, rendered on this verdict, Gallup has brought this case to this court for review.

B. B., B. & C. section 1, of which the land in controversy is a part, lies immediately west of and adjoining the William Cammack survey in Tyler county; the east boundary line of section 1 and the west boundary line of the Cammack being a common line. Cammack owned, at all times during the period in which he is claiming that his limitation title to a portion of section 1 accrued, that portion of the Cammack survey lying east of and adjoining the 160-acre tract out of section 1 which he recovered in this case. His home, dwelling house, etc., were located on that portion of the Cammack survey owned by him. He is basing his right to recover in this suit on an alleged adverse occupancy and possession from his home place over the line onto section 1 and variously estimated as containing between three-fourths and two acres.

In this court Gallup contends: "(1) That Cammack showed no such continuous use or occupancy of any portion of the 160 acres as would be sufficient to vest title thereto in him under the Texas statute of limitations; (2) that such occupancy and use as is shown to have been made by Cammack constituted a mere encroachment, and under the well-recognized so-called "encroachment" cases decided by the Supreme Court of Texas he is not entitled to recover the 160 acres in controversy; and (3) that he was not claiming to own the 160 acres under any such claim or claim of right as is recognized by the laws of Texas, and that the evidence does not bring him within the effect of the Texas limitation statutes."

These points are raised in the record by objections and exceptions to the charge, submitting the Texas limitation statute of 10 years to the jury as a basis of recovery on the plaintiff's part, and exceptions to the refusal of the court to instruct the jury peremptorily in favor of the plaintiff in error for all of the land in controversy, and exceptions to the trial court's action in submitting any issues to the jury for its determination, on the ground that there was no evidence to warrant the submission of any such issues.

Cammack testified in the trial as follows: "My name is S. B. Cammack. I am the plaintiff in this suit. I have had possession of a part of B. B., B. & C. Ry. Co. section No. 1, in Tyler county, Texas. I took possession in 1903. I moved on the place in the fall of 1902, but I did not take any possession of it until 1903. The first crop put on it was corn. This was in 1903. After the 1903 crop I put other crops on the land. I put crops on it every year with the exception of one since I have owned it. The one year that I did not put a crop on it was 1910. There is a wagon shelter and a horse lot and a garden on this land. I don't know when the wagon shelter was built there. It was there when I went there. It had been used prior to the period when I went there. I had been knowing this wagon shelter 10 or 12, or maybe 15, years before I went there. It was there when I was a small schoolboy. I used the wagon shed during 1910. I used it to have plow tools and shop tools in it. I maintained an inclosure on the land around the horse lot and garden in 1910. I put out fruit trees in the field on this land in 1910. I cultivated these fruit trees in 1910. I used the field for a hog pasture a part of the time in 1910. There are no buildings on the land that I claim, except the wagon shelter and garden and barn. The barn has been there only since January, 1911. I have used the wagon shed continuously since I went there, every year. I have figs, peaches, and apple trees on this land and I have mulberries now. They were put out in 1911. I put out other trees there but they died out. This was during my occupancy since 1902. I have English walnuts there, but they are not there now. They are dead. I gathered the fruit in 1910. The only other inclosure on section 1 is an inclosure which old man Cruse has. All of my occupancy in section 1 was under one fence, except that the garden was fenced off from the rest of it. I had two gardens on section 1. They were fenced up separately. I know where the line between section 1 and the Cammack survey is. The plat which you show me correctly shows the improvements I had on section 1 in a general way."

On cross-examination by the defendant the said plaintiff, S. B. Cammack, testified as follows: "Before I moved to the house where I now live, I lived on the old place on the Cammack survey. My dwelling house at present is on the Cammack survey, down in the southwest corner of it. I bought one hundred and sixty acres (160) of the Cammack survey in 1902 from my mother, Mrs. E. B. Cammack. I bought it on July 9, 1902. The 160 acres which I bought from her is the land on which my house is built. My house, I suppose, is 4 or 5 feet from the west line of the Cammack survey, and is over on the Cammack survey. My residence is something about 80 varas north of the southwest corner of the Cammack survey, maybe more, maybe less, I don't know exactly. 1903 was the first year I cultivated any portion of section 1. I moved into the house on the Cammack survey right soon after I got the deed to it, in the fall of 1902, as soon as the renter on the place was going out. My mother had a renter there. I never measured how much of the land on section 1 I cultivated during the year 1903. I don't know exactly. It was an acre and a half or maybe two acres, something like that. I didn't cultivate very much in 1904. I did not have anything there except a garden. There was no fence around it in 1904. The garden that I had was on the Cammack in 1904. I have not lived on that place continuously since 1903. Since then I have lived in Colmesneil part of the time. I moved into Colmesneil in the fall of 1903 and lived there in a rent house. I don't remember exactly how long I stayed in Colmesneil. I moved back on my place on the Cammack survey some time about September, 1904, having left there the fall of 1903. It is about six miles from Colmesneil to my house. I have moved away from that house since then. This was in 1907, I think, maybe in February. It might have been January or February, 1908. It was some time in the winter, some time in the winter of 1907 or 1908. When I moved away that time I lived about a mile south of my house on the Cammack survey in February, 1910, and went on my mother's old place, which is nearly a half mile north of my place on the Cammack, and is stated to be on the north end of the Cammack survey. I lived there at my mother's old place one year, which would bring it down until some time about February, 1911. I then moved back on my place, back to my house down on the southwest part of the Cammack, and have been living there ever since then. No one lived in my house while I was away. I did not rent it out. In the spring of 1903 I put about two acres or an acre and a half of the land on section 1 lying west of the Cammack survey in cultivation. This was in the early spring, about the time we usually put crops in. As well as I remember, I put corn in that year. I was cultivating the land out of the Cammack survey that I own and that is described in the deed from my mother. There was no fence along the west line of the Cammack survey at that place. There was a lane along there between this patch and my place. This lane runs west of the Cammack line, but not all the way. It runs kind of across the line. There was no fence running along the west boundary line of the Cammack survey. There is no fence there now. I don't know exactly how much land I had in cultivation in 1903 on the Cammack survey; I suppose about 12 or 15 acres. There was nothing between the field on the Cammack survey and the field on section 1, except a road which ran along there between them. I planted Irish potatoes and turnips in the field on section 1 in the fall of 1904, while I was living in Colmesneil. I went out there and planted them in the patch west of my house. I suppose there was about an acre and a half in that patch but don't know exactly. I planted a crop there in 1905. I think it was sweet potatoes, but I don't know that I can tell you exactly what I planted there every year. This was in that patch off of the Cammack. During all of these years I was using the land on the Cammack, putting it in crops every year. I put a crop in there in 1906, and worked the patch and my field too. I did this also in 1907 and 1908 and 1909. There was no crop planted there in 1910, except the fruit trees; that is all. In 1910 I was living on my mother's place a half mile north of this place. The field down there on section 1 was planted in oats that year, but I did not have any crop on section 1. The only thing I had there that year was an orchard. Part of this orchard was on the acre and a half I have been talking about, and part of it was not. Not very much

of the orchard was off of the Cammack. Perhaps an eighth of an acre was off of the Cammack, 12 or 15 trees, something like that. So that all these years all the land that I had cultivated or was using was this patch of about an acre and a half and the orchard of about one-eighth of an acre. I cultivated the patch of an acre and a half every year, except one year, which was in 1910, and the orchard was there during 1910 on the eighth of an acre. It is correct that the only use and occupancy of any land on section 1 by me during these years has been a little less than two acres. All of that is one improvement around the house. It is all under one fence on the Cammack and section 1. I never surveyed the lines of section 1. Mr. John Cruse lived something like 400 yards from my house."

On redirect examination the said plaintiff, S. B. Cammack, testified as follows: "When I went on that land, and took possession of the improvements, and put out the other improvements, I was claiming 160 acres of section 1. I have claimed 160 acres there from the time I went down to it up to the present time. I tended the patch there and made a crop on it every year except 1910. I went back there every year except 1910, and made a crop, whether I was living in the house or not. In 1910 I pastured my hogs on section 1, and tended the fruit trees, and put out other fruit trees, and had tools in the wagon shed, the same as any other years. I have used that shed every year. It has been in constant use, and even though I moved away I kept my tools in the shed. This wagon shed is outside of the inclosure about which I have been testifying. It is clear outside of the fence. I have cut posts and wood and pickets off of section 1 outside of the part I was cultivating. I did these things on other parts of section 1 within the limits I am claiming. I have pastured hogs on other portions of section 1 out on the section. I did this under a claim to 160 acres."

On recross-examination the said plaintiff, S. B. Cammack, testified: 'I happened to first start to claim 160 acres of section 1 by cultivating it. I first claimed it in the winter of 1902. The thing that put it into my head to start claiming 160 acres of that section was that I thought I could claim it by cultivating it. I have never had any specific tract of 160 acres out of that section surveyed off at all. I was only claiming 160 acres. I was not claiming an undivided interest in every acre of the section. I was claiming 160 acres. I suppose I was claiming an undivided 160 acres in the section. I claimed 160 acres. I claimed it west of my house there, and the 160 acres that I wanted would include my improvements there. There was no definite piece of land that I claimed. There were no lines there. I did not have it surveyed out."

The following is the material part of the trial judge's charge to the jury:

"The defendant in the case, in addition to denying the right of the plaintiff to recover 160 acres of land, has filed what is known as a cross-action for the entire survey, and in the state of the case before the jury the only issue for you to decide is as to whether the plaintiff has shown his right to recover 160 acres claimed by him under the 10-year statute of limitation. The defendant, as a matter of law, is entitled to recover the entire section, outside of the 160 acres, and is entitled to recover the 160 acres also, unless the jury find from a preponderance of the evidence that the plaintiff has established his right to recover the 160 acres under the 10-year statute of limitation.

"The law upon the subject provides: 'Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward.'

"Another section provides: 'The peaceable and adverse possession contemplated in the preceding article as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements.'

"A subsequent section of the statute provides: 'Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims.'

"So that the court informs the jury as a matter of law that should you find by a preponderance of the evidence that the plaintiff Cammack had matured his title under the 10-year statute of limitation by proving the elements and facts necessary to constitute such title, then his title will be sufficient to entitle him to bring suit as plaintiff and recover upon the 10-year statute of limitation 160 acres of land, but before you could reach that conclusion the plaintiff must show the jury by a preponderance of the evidence that his title has matured under the 10-year statute of limitation by proving by the testimony the necessary elements to mature his title under that statute. You will observe from the reading of the statute that there are three indispensable elements to be proven by the plaintiff in this case before he can recover; that is, he must show that he has had peaceable possession of the 160 acres, he must show that he has had adverse possession of 160 acres, and he must show that he has cultivated, used, *or* enjoyed the land. It is not necessary to show that he has cultivated, used *and* enjoyed the land, but must show cultivating, use, or enjoyment of it. It is not necessary in this case, in order to entitle the plaintiff to recover, that he show that he has had possession of the entire 160 acres, cultivating, using, or enjoying it; but where he has not shown possession of the entire 160 acres, then the burden devolves upon him to show possession of a portion of the tract, exercising over that portion such acts of ownership and dominion as would manifest an intention to claim the entire 160 acres. In other words, where the plaintiff in a case like this has proven to the satisfaction of the jury by a preponderance of the evidence that his possession of that part of the tract was of such character as manifested on his part an intention to assert an adverse claim to the whole 160 acres, it is not necessary for him to show actual possession of the entire 160 acres; but the possession must be of such character and surrounded by such circumstances as evinced plainly an intention on the part of the plaintiff to assert title to the entire 160 acres. Where he has done that, then the law would, by construction, extend his possession over the part over which he had his flag flying to the whole 160 acres. But in order to fulfill these requirements of the law he must show the character of possession which the law requires under the statute, viz. peaceable and adverse possession.

"The meaning of these terms has not been left to judicial construction, but the Legislature has defined what it takes to constitute in Texas 'peaceable possession' and 'adverse possession.' The court will now read in your hearing the definitions given by the Legislature of Texas of the terms 'peaceable possession' and 'adverse possession.' 'Peaceable possession, within the meaning of this chapter, is such as is continuous and not interrupted by adverse suit to recover the estate.' That is, before the plaintiff in this case could recover, he would have to show by a preponderance of the evidence that his possession had been continuous for the full period of 10 years prior to the institution of the suit. The possession must be consecutive year by year, and be a peaceable possession for the full period of 10 years. In other words, if a man goes into possession of a tract of land and holds it for 5 years, and abandons that possession and moves away for a period of time, and then comes back and retakes possession, there would be such a break in his possession as would take it out of the definition of peaceable possession, because the possession would not be continuous, and therefore one necessary element in the case would be lacking, and in such case the plaintiff would not be entitled to recover under the 10-year statute of limitation. So in this case, if the jury find that the plaintiff went into possession of a portion of the land in controversy, with the intent on his part to assert adverse claim to the entire 160 acres, but you further find that he abandoned that possession before the completion of the 10-year period, such abandonment would have the effect in law to destroy the continuity of his possession, and thereby take out of the case one necessary element of the plaintiff's right to recover.

"Another requirement of the law is that the possession must be not only peaceable, but adverse. The Legislature of the state of Texas has not left to the construction of courts and juries what it takes to constitute 'adverse possession,' but has defined it as follows: 'Adverse possession is an actual and visible appropriation of the land, commenced and continued under a

claim of right inconsistent with and hostile to the claim of another.' The meaning of the definition which I have read to you, gentlemen, is that the possession, in order to constitute adverse possession, must be an open, plain possession evincing an intention upon the part of the plaintiff to claim the land adversely against all the world. As some law writers have put it, and counsel has used the term, it must be such possession as to show that the plaintiff had 'kept his flag flying' for a full period of 10 consecutive years, thereby notifying all comers that he was holding adversely against the whole world, and by the possession he had of a part of the land manifesting an intention to claim the whole 160 acres.

"There is another element necessary to constitute adverse possession, and that is that the acts of ownership and assertion of claim by the plaintiff must have been such in their nature, or in connection with the circumstances surrounding them, as to put a reasonably prudent person on notice that plaintiff was on the ground asserting adverse claim to 160 acres. In other words, if the acts of the plaintiff were not such as to advise the owner, if he was a reasonably prudent person, that the land was claimed adversely, then it would not be such adverse assertion of claim as would assist in maturing the statute. A man may not in this state perform qualified acts of dominion over land, and thereby obtain title by limitation; but the acts of ownership and assertion of claim must plainly manifest a disposition and intent on his part hostile to every one else, and be such as would put a reasonably prudent person upon notice that he was asserting such adverse claim. Where it fulfills those requirements, the provisions of the law are satisfied, and in such case, if the possession has been for a period of 10 full consecutive years, the title by limitation will mature. Where it falls short of that, the title will not mature.

"In this case you have heard much testimony as to where the lines of section No. 1 and where the lines of the Cammack survey are. The purpose of the testimony is to enable the jury to determine whether the possession of the plaintiff of the land to which he asserts title was a mere encroachment by the plaintiff on the land contained in survey No. 1, or whether it was a peaceable, adverse possession of it within the terms of the law as I have detailed to you. In other words, if an adjoining landowner extends his possession over to land not his as of right, and thereby takes in some small portion of the land to which he does not hold the record title, the law will not presume that he intended by that encroachment to assert an adverse claim; but the law would presume in such case that the extension of his possession over onto the adjacent land was by mistake, and that the owner of the land upon which the encroachment was made would not thereby be put upon notice that the plaintiff was intending to assert title to the 160 acres owned by the man holding the record title. It is for the jury to say whether the possession of the plaintiff was an encroachment, which did not put the owner of section No. 1 on notice, or whether the owner, by exercising such care as, a reasonably prudent person would have exercised under the circumstances, would have understood from the acts of dominion and ownership asserted by the plaintiff that he was upon a portion of the survey asserting an adverse claim and intending to set up title to 160 acres. If the proof has reached that character of certainty in the minds of the jury, then the plaintiff would be entitled to recover. If the jury find from the testimony that it was a mere encroachment by the plaintiff on section No. 1, and that the owner of section No. 1 would not be put upon notice by the acts of dominion and ownership and assertion of claim made by the plaintiff that he intended to claim the land adversely, it would become the duty of the jury to return a verdict for the defendant. I have tried to make the matter as clear as I can. If you find any difficulty in understanding the charge, you are invited to interrogate me. It is a question for the jury to determine whether for a full period of 10 years the plaintiff in this case was in adverse possession of the land—that is, whether he was in possession of a part of it, asserting claim to 160 acres of it, and asserting it in such manner as to show he was 'flying his flag,' and setting up title to it, and claiming it adversely against all the world, and whether

such acts would put a reasonably prudent person upon notice of the character and nature of his claim."

Ballinger Mills, of Galveston, Tex., for plaintiff in error.

Oliver J. Todd, of Beaumont, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and NEWMAN, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The charge of the trial judge clearly gives the law of Texas in regard to acquiring title under the 10-year statute of limitation; but the question brought before us is whether the evidence in the case shows such continuous adverse possession by Cammack as warrants a recovery by him under the provisions of the said statute. In Sellman v. Hardin, 58 Tex. 86, it is held that evidence that claimants had paid taxes on the land, and used firewood from it, and kept people from trespassing on it, and had built a hogpen on it, and used it as a ranch for his cattle and horses, but had made no inclosure except the hogpen, nor had he ever lived upon it, nor occupied it by a tenant, was not sufficient to show such adverse possession as would sustain the plea of limitation. Grazing cattle or cutting timber does not show such possession as will support a plea of limitation.

[1] The occupation must be exclusive and continuous. See Richards v. Smith, 67 Tex. 610, 4 S. W. 571; Pendleton v. Snyder, 5 Civ. App. 427, 24 S. W. 363. In Bracken v. Jones, 63 Tex. 184, it was held that where the claimant fenced and cultivated 4 acres on adjoining land in connection with his own premises from 1859 down to March 15, 1882, about 23 years, it did not establish such possession as would give him title to more than he had enclosed. In that case the court said:

"Possession, to be of any value to vest a right or bar a remedy, must be actual, continued, visible, notorious, distinct, and hostile. It must be fair and open as 'the statute was not made to serve the purpose of artifice and trick.' Sailor v. Hertzogg, 2 Pa. 185, quoted in Word v. Drouthett, 44 Tex. 370; Satterwhite v. Rosser, 61 Tex. 166. It can scarcely be said that in such a case as the present the possession is notorious, visible, and distinct, so as to fulfil the requirements of the 10-year section of the statute of limitation. Whilst the true owner is chargeable with a knowledge of the boundaries of his land, he can hardly be affected with notice that a neighbor, who has encroached a few feet upon his tract, is doing so for the purpose of acquiring title to 640 acres of it. He would rather impute it to a mistake on the part of the apparent trespasser as to the division line between them. Whilst this might not excuse the party trespassed upon for not asserting his right to the land actually occupied by the trespasser, it would certainly save him from such consequences as the loss of a section of his land. The party encroaching would be entitled to no more than the land actually occupied by him. The case is different when one settles upon the land of another, claiming under a recorded deed, and having his improvements located within the bounds called for in such deed. Then the true owner has notice of the extent of the claim of his adversary, and that the improvements are upon it as well as upon his own land, and that, if continued for the requisite period of time, they will give title to the extent of the land described in the recorded instrument. He knows the consequences of such possession, and must provide against them. Brownson v. Scanlan, 59 Tex. 222. But suppose such a possessor should, by accident or otherwise, have a small portion of his improvements

beyond the line of his boundaries, as claimed in the deed. Is he to get to the limits of his deed by 5 years' possession, and 640·acres besides by reason of his slight extension of improvements beyond his line? If so, he would recover far beyond what a 10 years' possession, under the law we are considering, would give him. The extent of a recovery in such case, over and above the 640 acres, is the amount actually covered by the inclosure of the trespasser. Charle v. Saffold, supra [13 Tex. 94]. In the case of Mooring v. Campbell, 47 Tex. 41, this court considered that the state of case most prominent in the minds of the legislators in enacting the foregoing provisions of our statute of limitations was the case where one person is in adverse possession with all of his improvements on a large tract of land belonging to another. 'Any flexibility,' it was said, 'in adapting the statute to a state of facts variant from this must be arrived at by construction.' And Chief Justice Roberts, after alluding to the strange, if not unreasonable, consequences of allowing one person to acquire 640 acres of land from his neighbor by merely a strip of adjoining land in a field belonging to the former, says that we must confine 'the construction of the statute to the particular facts of each case.'" Bracken v. Jones, 63 Tex. 184 et seq.

Titel v. Garland, 99 Tex. 201, 87 S. W. 1152, Holland v. Nance, 102 Tex. 183, 114 S. W. 346, and Bender v. Brooks, 103 Tex. 335, 127 S. W. 168, all Supreme Court decisions, cite Bracken v. Jones with approval.

In Bender v. Brooks, the court, after citing Bracken v. Jones, said:

"In the case now before us, as in the case just quoted, the house and all improvements, except a portion of the fencing, was upon another tract of land. The use of the field was incidental to the use of the house, and the possession of the field in its entirety could be referred only to the possession of the house and the other land inclosed within the field. The inclosure gave not the slightest intimation to the true owner that the person who was residing upon the 30 acres of the adjoining tract was setting up claim to the entire survey of 663 acres. The evidence does not tend to prove a possession adverse to the owner of the Dunman survey. We therefore hold that the evidence submitted with this certificate did not justify the court in submitting the issue of limitation to the jury." 103 Tex. 335, 127 S. W. 168,

In Smith v. Jones et al., 103 Tex. 632, 132 S. W. 469, the Supreme Court of Texas, after distinguishing Bracken v. Jones and Holland v. Nance, supra, as to facts involved, held:

"A tenant of a tract made a survey of adjacent land and located thereon a dwelling house and other buildings incident to a home, for which purpose the land was afterwards held and used for more than 10 years. Held, that the court could not rule, as a matter of law, that the possession was too deceptive in its appearance to support the defense of limitations."

In Stevens v. Pedregon, 173 S. W. 210, the Supreme Court of Texas, after quoting from Sellman v. Hardin, supra, held as follows:

"At no time from the first entry upon the land to the institution of this suit does defendant in error claim to have actually resided upon the land, nor to have had the land or any part of it inclosed; nor does he claim that at any time he had a tenant upon it for a length of time sufficient to constitute limitation under any provision of the law or any decision of this court. Such possession as he claims to have had consisted of cultivating a small portion of the land, one year at one place and the next year at another. Some years there was no cultivation of any part of the land for the want of water. There was nothing in his acts that would indicate a claim of ownership of the land. All that defendant in error did in the use of the land might well have been regarded as harmless trespass. Schleicher et al. v. Gatlin, 85 Tex. 270, 20 S. W. 120."

As to adverse possession and directing verdict, see Bundick v. Moore-Cortes Canal Co. (Tex. Civ. App.) 177 S. W. 1031–1035, and Texas & N. O. R. Co. v. Williams (Tex. Civ. App.) 178 S. W. 701.

Many other Texas decisions of the Supreme Court and the Courts of Civil Appeals, considering the question of the adverse possession necessary to support a title to land under the Texas statutes of limitation, can be shown, but it would serve no useful purpose. The most, if not all, are applications of the statutes to the particular facts as presented in each case.

[2] Cammack's evidence (copied in full above) shows his entire case and claims in the trial court, and may be summarized as follows: He bought 160 acres of the Cammack survey July 9, 1902, and on this land his house and appurtenances were then and subsequently built. Prior to this purchase there had been an encroachment over the unlocated boundary line between the Cammack survey and section 1 of from one to two acres, cultivated and upon which had been erected a four-post wagon shed, with a roof, but uninclosed sides; but this encroachment had been abandoned—at least, Cammack in this case takes nothing from it. Cammack moved onto his purchase in the fall of 1902, but did not take possession until 1903, in which year he cultivated his own land and about an acre and a half to two acres on section 1 adjoining on the west, practically the same land as the former encroachment; but he did not live there continuously. In the fall of 1903 he moved into Colmezneil, about six miles distant, and there lived in a rent house, but moved back to the Cammack survey in September, 1904. He moved again in February, 1907, to a place about a mile south of his house on the Cammack survey, moving back in 1911. No one lived in his house while he was away. During all the time, however, he cultivated his own land and the encroachment, except during 1910 he had no portion of the encroachment in cultivation, except he planted about an eighth of an acre in fruit trees (12 to 15) in extending an orchard on the Cammack survey, and during the year tended fruit trees and used the wagon shed for storing tools. During 1910 and at other times he pastured hogs on section 1, and at times not given he had pastured hogs and cut posts and wood and pickets on section 1. Cammack's claims of 160 acres from section 1 were mental, save as shown by the foregoing facts.

On this state of facts, in the light of the decisions of the Texas courts hereinabove given, we conclude that the evidence, taken most favorably to the defendant in error, shows a mere encroachment, and no such continuous adverse possession by Cammack as to give the owner of the unoccupied section 1 notice that he was claiming adversely any part of said section, or to authorize a recovery by him of 160 acres of land from said section under the provisions of the Texas statute of 10 years' limitation as against the owner of the record or paper title. In our opinion, the trial judge erred in refusing to direct a verdict for the plaintiff in error.

The judgment of the District Court should be reversed, and the cause remanded, with instructions to grant a new trial; and it is so ordered and adjudged.