BALDRICH et al. v. BARBOUR.

No. 3175.

Circuit Court of Appeals, First Circuit.

June 1, 1937.

868

Virgilio Brunet, Rafael Soltero Peralta, and Hugh R. Francis, of San Juan, P. R., for appellants.

A. Cecil Snyder, U. S. Atty., of Baltimore, Md. (D. B. Hempstead, Asst. Atty. Gen., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an action brought in the United States District Court for Puerto Rico for the recovery and possession of certain lands situated in Puerto Rico. The original plaintiffs in the action and certain "plaintiffs in intervention" set forth in their complaint that they are the owners in fee simple of approximately 6,000 acres of land situated in the municipal district of Rio Grande, Naguabo, Fajardo, and Luquillo, describing it by boundaries.

The plaintiffs allege that under a royal order issued by the King of Spain in 1786, their ancestor, Francisco de los Reyes Correa, obtained title to the lands described, from whom they claim to have acquired title by descent.

By the treaty of peace between Spain and the United States in 1899, the United States acquired title to all public land formerly owned by Spain (30 Stat. 1758, art. 8). By Act of Congress of July 1, 1902, Congress vested title in the government of Puerto Rico of all public lands in Puerto Rico belonging to the United States and not reserved for public purposes by the President of the United States, upon the condition that the government of Puerto Rico release to the United States any interest or claim it may have upon any of the lands so reserved (32 Stat. 731, § 1, 48 U.S. C.A. § 746).

On January 17, 1903, the President pursuant to the Act of July 1, 1902, by proclamation reserved certain lands in Puerto Rico as a public forest reserve to be known as "Luquillo Forest Reserve," which included all public lands situated within certain defined degrees of latitude and longitude and not theretofore appropriated or reserved. Warning was expressly given to all persons not to occupy or use the lands reserved by this proclamation (32 Stat. 2029).

By Act of February 16, 1903, the Legislature of Puerto Rico (section 4 [Rev.St. & Codes 1913, § 1673]) authorized the Governor to release any interest in land belonging to the United States reserved by the President pursuant to the Congressional Act of 1902. This court has held that the Governor is presumed to have complied with his duties in this respect. People of Porto Rico v. Fortuna Estates et al. (C.C. A.) 279 F. 500, 508.

The defendant claims the right of possession of all lands included in the Luquillo Forest Reserve in his capacity as forest

supervisor, which includes the lands claimed by the plaintiffs in this action; that they have been occupied and possessed by his predecessors in office since 1903; and the plaintiffs admit that the lands described in the complaint have been in the exclusive possession of the Supervisors of the Forest Reserve since 1913.

This is clearly not an action to settle the title to the lands. If so, the United States must have been made a party, which could not be done without its consent, United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; and in this case, which came before this court on demurrer, 71 F. (2d) 9, it was held that it was a suit to recover possession only, and while the defendant must show that the United States had title to sustain his right of possession, the suit was not one to settle the title to the lands described.

The plaintiffs rely on certain documents found in the Department of the Interior at Puerto Rico to establish their title to and right of possession of the lands described in their complaint, which included a copy of the royal decree issued by the King of Spain to distribute certain lands in Puerto Rico to the residents under date of 1778, which, not being executed, was confirmed by the royal order of 1786. The royal decrees of 1778 and 1786 required that when the survey was made and the lands distributed, a report was to be submitted to the King for his confirmation. There is no evidence that this was done. Tiglao v. Insular Government of Philippine Islands, 215 U.S. 410, 415, 416, 30 S.Ct. 129, 54 L.Ed. 257; Malarin v. United States, 1 Wall. (68 U.S.) 282, 17 L.Ed. 594; Ainsa v. United States, 161 U.S. 208, 231, 16 S.Ct. 544, 40 L.Ed. 673; Bergere v. United States, 168 U.S. 66, 18 S.Ct. 4, 42 L.Ed. 383. The documents presented by the plaintiffs as being on file in the Department of the Interior of Puerto Rico all appear to be merely copies, and no effort was made to explain the lack of or to account for the nonproduction of the originals.

The copies presented were neither examined nor certified copies of the original documents. It was not shown that they were the best evidence that could be produced, or that the originals were lost and were not a part of the records of the government office at Madrid. They lack many elements of proof of a valid grant to Francisco Correa.

While there is some evidence in these copies that a survey was made of certain lands by representatives of the Spanish government, the boundaries of the lands claimed to have been surveyed are so indefinite that it is impossible to determine with any accuracy the lands included therein. The boundary lines at one point ran "in a straight line mediating between two of the highest ridges or peaks of Sierra de Luquillo"; thence running "in the direction of northeast to another peak or cliff less high"; and included three imaginary lines, the "three imaginary lines being discretionally guessed, as a large number of cliffs and defiles make the lands inaccessible."

A detailed description of the lands claimed to have been included in the original survey is so long and the references therein so vague and indefinite that, without a knowledge of the locus and a map, it cannot be of any assistance in an opinion in determining the discretionary and imaginary boundaries of the lands described in the original survey.

The court has in several instances declared that the documents produced failed to sustain the plaintiffs' claim under the alleged grant, that their title, if established at all, must be by open, adverse, and uninterrupted use. No maps are furnished this court except two maps of the "Luquillo National Forest." The only evidence of occupation by the plaintiffs consisted of the cutting of timber claimed to have been on the lands described in the complaint, but even if done under a claim of right and openly, it was admitted to have been interrupted by the defendant in 1913, and since that time the United States, through its Forest Supervisors, has been in exclusive possession of said lands. Merely to go on land to cut timber without fixing any boundaries to the land so used does not amount to adverse use, unless done openly and to the exclusion of the rightful owner. Whitney v. United States, 167 U.S. 529, 546, 17 S.Ct. 857, 42 L.Ed. 263; Gallup v. Cammack (C.C.A.) 229 F. 68, 74. The cutting of timber after the grant to the United States cannot be held to be adverse to the government. Stull v. United States (C.C.A.) 61 F.(2d) 826.

One Manuel Font, a civil engineer, testified for the plaintiffs that he had prepared a map marked "Exhibit M" by following the description of the early survey. He apparently based his description of the

land contained in the complaint upon a map of the Luquillo National Forest, eliminating the imaginary boundaries. He testified, however, that the survey did not "close"; that the map made by him, Exhibit M, was necessarily a guess and his estimate of the acreage might be wrong; it might be 1,000 acres, more or less, than his estimate; that he had not gone on the land to make the map or to measure the land; that there are three imaginary lines referred to in the original survey, and although this does not necessarily make the original survey absolutely unreliable, a survey of the imaginary lines necessarily cannot be very definite and exact; and that the point of the beginning of the land mentioned in the complaint and survey is not located in the National Forest Reserve. To recover in a real action, the plaintiff must depend on certainty of his own title.

Under section 125 of the Code of Civil Procedure 1931, in a real action for the recovery of lands, they must be described in the complaint with such certainty as to enable an officer upon execution to identify them. How can an officer identify lines running "midway between the two highest summits or peaks of the Sierra Luquillo," and then along the boundary of the Luquillo Forest "to other peaks less high," when according to the testimony, by reason of the cliffs and defiles it is impossible personally to examine the land and locate the boundaries? Siragusa et al. v. People of Porto Rico et al., 18 P.R. 579; Estate of Fernandez v. People et al., 16 P.R. 545, 551; Caneja v. Rosales & Co., 19 P.R. 256.

In Sucesion de Francisco de los Reyes Correa v. Bruner, 13 P.R. 131, an action to recover the same property as described in this complaint, which the plaintiffs, as in the present case, alleged was acquired under a grant from the Crown of Spain to the ancestors of the plaintiff, Francisco de los Reyes Correa, a jury was waived and the District Court held that the evidence did not disclose that the land was of the value of $3,000, but considered the case on its merits, and said:

"Assuming that I am in error in regard to the points already established in this opinion and that this court actually has jurisdiction of the controversy, I would be obliged to find a verdict in favor of the defendant for the following reasons: First, the description of the land claimed by the plaintiff as set forth in paragraph 2 of the complaint, while intended to be the same land referred to in a certain ancient survey hereinafter mentioned, does not conform thereto. In other words, the description of the lands set forth in the complaint is not identical with the lands which are described in the survey which was introduced in evidence, and this ancient survey is in several respects so vague and indefinite as to make it impossible to identify the land intended to be embraced within the limits thereof. This ancient survey speaks of one line being carried from a definite point to a point on two hills. It is impossible to understand how there can be one point on two hills. In another part of this old survey there is a statement that the boundaries must be determined by imaginary lines. I therefore would be obliged to hold that even if there were proven a Spanish grant attempting to describe lands in the exact language of the ancient survey, such grant would be void for uncertainty."

The District Court closed its opinion by saying: "I wish to make it clear that I am deciding this case against the plaintiffs simply because I am forced to the conclusion that they have failed to prove every material allegation of the complaint."

Later a second action was brought against a predecessor in office of the defendant in the case of Sucesion of Correa v. Kramer, a forest supervisor. This case was decided in January, 1927, but there appears to be no record thereof in the Federal Reporter. The court is said to have had before it an action involving the identical issues raised in the present case by the alleged heirs of Francisco Correa based on the same alleged grant from the Crown of Spain. The District Court of Puerto Rico, after trial on the merits, directed a verdict and entered judgment for the defendant. This court set aside the judgment and remanded the case with directions to dismiss for want of parties defendant necessary in order to determine the title to the land in question. Certiorari was denied by the Supreme Court. Reyes Correa v. Kramer, 274 U.S. 757, 47 S.Ct. 768, 71 L.Ed. 1336.

The District Court in the present case at the close of the plaintiffs' testimony stated to counsel that, "I think that the survey itself is so indefinite that it would be impossible to determine the lands within the survey. There is a map survey showing a total area of 40,000 acres, stating that this property belongs to the heirs of Fran-

cisco Correa and others. There is nothing to show any partition, or how to go and locate that property that is the property belonging to the heirs of Francisco Correa, or who the others are. I think that is too indefinite to fix title to land. * * * I am forced, therefore, to conclude that the plaintiffs have failed to make such prima facie showing in support of the allegations of the complaint as is necessary to justify me in submitting that issue to the jury. I think the plaintiffs have failed, in accordance with the rules of law, to establish title either by grant or by possession."

The District Court then instructed the jury to write a verdict for the defendant.

Whether or not the exact issues were involved in the previous cases against the predecessors of the defendant as are raised in the present case, it appears that the court has not been impressed with the evidence of the plaintiffs as establishing their right to possession of the land described. There is also lack of evidence to sustain the claim of the plaintiffs that they are the lawful heirs of Francisco Correa, due to failure to record marriages. The only records produced were those of deaths contained in the records of the church.

■ In any event, it being admitted that the defendant has been in possession of the property described in the complaint for more than twenty years, we think that, under section 1858 of the Civil Code, the plaintiffs' rights in the land described in the complaint have been prescribed by the possession of the defendant for more than ten years.

■■ The proclamation of the President and the release of the Governor of Puerto Rico (such a proclamation has the same force as an Act of Congress, United States v. Morrison, 240 U.S. 192, 212, 36 S.Ct. 326, 60 L.Ed. 599), have at least, the effect of a quitclaim deed. Under section 1858 ownership and other rights in real property shall be prescribed by possession for ten years as to persons present and for twenty years with regard to those absent with good faith and proper title.

■ The complaint discloses that both the plaintiffs and plaintiffs in intervention are "persons present" within the meaning of the statute. No allegation of bad faith is made. The good faith of the Forest Supervisor or his predecessors is not questioned, and good faith is always presumed. See section 364 of the Civil Code (1930

Ed.); Teillard v. Teillard et al., 18 P.R. 546, 547.

■ A proper title under the civil law is equivalent to color of title at common law. Delgado et al. v. Encarnacion et al., 35 P.R. 273; Hayes v. United States, 170 U.S. 637, 649, 18 S.Ct. 735, 42 L.Ed. 1174. A deed or conveyance without notice of any defect will give a proper title. B. Fernandez & Bros., Successors, et al. v. Ayllon Y Ojeda, etc., 266 U.S. 144, 146, 45 S.Ct. 52, 69 L.Ed. 209; People of Porto Rico v. Livingston (C.C.A.) 47 F.(2d) 712, 717; Teillard v. Teillard, supra, page 552. We think that the proclamation of the President in 1903 and the release of the Governor of Puerto Rico to all the lands of the Luquillo Forest so reserved establish a "proper title" required by section 1858 of the Civil Code to entitle the United States to the ten-year limitation provided in that section. If so, there can be no question, regardless of whatever title the plaintiffs' ancestors may have acquired in the lands described in the complaint, that they have lost possession and the right thereto under the Civil Code of Puerto Rico.

Since the case came before this court on demurrer, in 71 F.(2d) 9, the defendant has amended his answer to the complaint and set up the defense of res judicata and the statute of limitations. To sustain the defense of res judicata defendants rely on the cases of Correa v. Bruner, supra, and Correa v. Kramer, supra. If it were held that the cases cited do not sustain the plea of res judicata, we think the ten-year period of limitation under section 1858 bars these proceedings to recover possession.

■ The plaintiffs in intervention contend that they were not permitted to introduce evidence. By a stipulation it was agreed between the parties and approved by the court that "the plaintiffs would first present their evidence and that thereupon the plaintiffs in intervention would present their evidence. Whereupon the defendant would present his evidence." At the close of the plaintiffs' case, however, the plaintiffs in intervention remained silent and made no effort or request to present any other evidence, apparently relying on the evidence submitted by the original plaintiffs, nor have they indicated the nature of the evidence which they desired to introduce. We think they cannot sit silent and permit the court to decide the case without protest and complain after there is a decision against them.

There is nothing in the record to indicate that they were prejudiced by the decision of the District Court. It does not appear that the plaintiffs in intervention took any exceptions to the rulings of the District Court as a basis for their assignments of error. They filed a motion for reconsideration and granting of a new trial, which was overruled. They then filed, a motion to set aside the verdict for a new trial and on being granted extension of time to file memorandum, they failed to file such memorandum and the motion to set aside the verdict for a new trial was overruled and no exceptions were taken, whereupon the District Court, on motion of the attorney for the defendant, ordered and adjudged that the plaintiffs and the plaintiffs in intervention do have and recover nothing by reason of this suit and that the defendant recover his costs, to be taxed, and that execution issue therefor.

The judgment of the District Court is affirmed.