The State of Wyoming ex rel State Highway Commission of Wyoming

*Plaintiff and Respondent*

vs.

E. M. Stringer and E. G. Markley

*Defendants and Appellants.*

(No. 2774; May 7th, 1957; 310 Pac. (2d) 730.)

For the defendants and appellants, the cause was submitted upon the brief and also argument of Walter B. Phelan of Cheyenne, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of Howard B. Black, Deputy Attorney General, and Robert L. Duncan, Special Assistant Attorney General, both of Cheyenne, Wyoming. and oral argument by Mr. Duncan.

Heard before Blume, C. J. and Harnsberger and Parker, J. J.

200

## OPINION

Mr. Justice Parker delivered the opinion of the court.

In 1954 plaintiff, the State Highway Commission, proceeded with the reconstruction and improvement of U. S. Highway No. 20 between Basin and Greybull across certain land which the record showed to be in the nameof Henry Krueger, with an outstanding 1948 oil and gas lease to Defendants Stringer and Markley who had three stripper oil wells thereon. The 200 foot right of way would have included defendants' well. Krueger No. 2, except that plaintiff, recognizing the existence of the well, excluded a rectangular notch 105' by 50' so that the well instead of being included in the right of way remained some two inches outside. The commissioners of Big Horn County in 1951 had proceeded under Art. 3, c. 48, W.C.S.1945, making the newspaper publication provided in § 48-316, W.C.S. 1945, but admittedly sent no registered letter and gave no other notice to defendants whose address was shown by the recorded lease to be Denver, Colorado.

On July 15, 1954, defendants, being without knowledge of the condemnation proceedings, began preparation for clean out of Krueger No. 2, placing certain equipment in the right of way; and plaintiff brought this action against defendants for a temporary injunction, which, upon hearing, the district court made permanent. From such judgment defendants have appealed, raising, among others, the pivotal question:

Does newspaper publication under § 48-316 (without registered mailing of a copy) constitute notice as against a nonresident person owning or claiming an interest in land to be taken by eminent domain?

Plaintiff relies on Cottman v. Lochner, 40 Wyo. 378, 278 P. 71, 74, emphasizing an excerpt therefrom:

"* * * In view of the peculiar phraseology of the statute, the requirement that a copy of the notice should be sent by registered mail to owners of lands or those claiming an interest in lands over which a highway is proposed to be laid out is, in our judgment, directory merely. * * *"

Reliance on a single statement to solve any case is somewhat precarious unless such statement grows out of facts which are substantially identical with those which bring about the problem to be solved. In the Cottman case, a citizen, seeking to use a previously located highway, requested an injunction against a property owner who built a fence across the highway; and the property owner attacked the highway location for lack of service of notice. As the court there pointed out, the attack was clearly *collateral* in character. Moreover, no claim was made that the property owner had been unaware of the location of the highway. It is also significant to note the admonition of the court that:

"* * * The requirement [sending of registered notice] should be followed in each case so far as possible, but failure to do so cannot be held to vitiate the *entire* proceedings in establishing the road." (Emphasis supplied.)

In the instant case, the defendants could scarcely make a more *direct* attack than they have done in re-

sisting the injunction, insisting that the condemnation proceedings were instigated without proper service on them, and contending that plaintiff was without right of title to the property in the vicinity of the oil rig. It is undisputed that defendants knew nothing of the condemnation proceedings until shortly before the present action. Futhermore, defendants herein do not seek to vitiate the *entire* proceedings in establishing the road but seek only an opportunity to have their day in court for a determination of the proper amount of damage they suffer by reason of the interference with their property rights. Accordingly, the holding in the Cottman case must be taken as far less than a blanket pronouncement that a governmental agency may, by publishing a statement of location or road in the newspaper, foreclose an uninformed landowner's right to damages without an opportunity for hearing.

We pass then to another case on which plaintiff relies, Huling v. Kaw Valley Railway and Improvement Co., 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. 1045, in which condemnation of land for a railroad was held valid when there was full compliance with the terms of the statute requiring publication of notice. The case on preliminary perusal may seem to indicate that the mere appearance of a statement in a newspaper for the required number of times is sufficient to provide notice to a landowner in an eminent domain proceeding and to provide him his day in court on the question of damages. We doubt if the case should be so broadly interpreted inasmuch as the action there was one of trespass, obviously a collateral attack on the eminent domain proceeding. Moreover, the Court said at 130 U.S. 562 that "The transcript on its face seems to be regular in every particular, showing a full compliance with all the requirements of the statute on the subject."

A comprehensive analysis of the question is presented in Walker v. City of Hutchinson, Kan., 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178, reversing the lower court's denial of relief to a landowner whose property was taken by eminent domain after newspaper publication and without any copy of notice having been sent him. The Court said at 77 S.Ct. 202:

"It cannot be disputed that due process requires that an owner whose property is taken for public use must be given a hearing in determining just compensation. The right to a hearing is meaningless without notice. In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, we gave thorough consideration to the problem of adequate notice under the Due Process Clause. That case establishes the rule that, if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. We there called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions. We recognized that in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown.

"Measured by the principles stated in the Mullane case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In Mullane we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value.

"Nothing in our prior decisions requires a holding that newspaper publication under the circumstances here provides adequate notice of a hearing to determine compensation. * * *"

Counsel for plaintiff insist the Supreme Court "merely ruled that since Walker was a resident of the State of Kansas, he was entitled to personal notice of the proceedings and that an attempt to give resident landowners notice of the condemnation proceedings by newspaper publication was unconstitutional." We do not think this interpretation of the Walker case is warranted.

This court in an early case, Sterritt v. Young, 14 Wyo. 146, 82 P. 946, 947, 4 L.R.A.N.S., 169, 116 Am. St.Rep. 994, stated with clarity the basic rule in eminent domain cases.

"That the owner of property taken from him by virtue of the right of eminent domain is entitled to notice and an opportunity to be heard upon the question of the amount of his compensation can hardly be questioned. The decisions are almost unanimous on that subject. * * *"

We also bear in mind that strict construction is almost universally required in statutory condemnation actions, as is indicated by the following:

"A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication; and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. * * * Authority cannot be implied or inferred from vague or doubtful language. When the matter is doubtful, it must be resolved in favor of the property owner." 18 Am.Jur., Eminent Domain § 26. See also Id. at § 312.

However, we should recognize that proceedings for taking private property for public use present two distinct phases. The first is for the establishment of the necessity and convenience in the taking of the property in accordance with statute. Such statutory right cannot be enlarged by implication, but courts have repeatedly held that actions to implement such right are in rem and that posting of notices of the proceedings and publication by newspaper is sufficient to establish jurisdiction for the determination of public need and convenience in the taking of the property. The second phase of condemnation proceedings relates to damages which may be recovered by an owner whose property has been taken. Most courts indicate the desirability, wherever possible, of a more positive, direct, and personal notice to the parties affected, especially where the statutes specificially provide for mailing. This is apparent in Walker v. City of Hutchinson, Kan., supra, as well as Cottman v. Lochner, supra. In the last-mentioned case, our court felt it necessary to fortify its holding that publication in a newspaper was sufficient by explaining that the complaining parties had *actual* notice of the condemnation proceedings. The Court in the Walker case made unmistakable its aversion to giving less than all practicable —if not all possible—notice to persons whose property was being taken. Its reversal of a contrary holding by the lower court insured the owner a hearing prior to the fixing of the amount of compensation to be paid him.

We feel the rule announced in Walker v. City of Hutchinson, Kan., supra at 77 S.Ct. 202, that "if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests," is not only sound, but is of practicable application. Certainly,

adherence to that rule will usually give interested parties an opportunity to have their day in court when the amountof their damages is litigated. Such a rule does no violence to this court's previous holding that notice by newspaper publication is sufficient to give jurisdiction in condemnation actions when the affected parties had *actual* notice and, consequently, had opportunity to take part in proceedings for ascertainment of the damages. Where actual notice is lacking—as seems to be undisputed in this case—the minimum compliance with our statute would require the mailing of a notice to the affected parties in all cases in which their names and whereabouts are known or may be ascertained with reasonable diligence. If the address is not known and cannot be ascertained with reasonable diligence, then that fact should be made to appear. The law never requires that to be done which is impossible, yet fairness and justness require that everything reasonably possible be done to afford an opportunity for hearing to the person whose property is being taken for public use. Even though the statutory provision insofar as necessity and convenience is concerned be considered as directory only still it furnishes the yardstick which helps measure that which is reasonable in a given case.

Plaintiff insists that the oil lease from Krueger to defendants was not an interest in land but was a *profit a prendre* within the interpretation of Boatman v. Andre, 44 Wyo. 352, 12 P.2d 370. This contention is without merit. The Boatman case itself states that an oil and gas lease constitutes a *right;* and 2 Tiffany, Real Property, 2d ed., p. 1397, therein cited, contains this statement which we think is conclusive:

"* * * Since the grant of such a right [*profit a prendre*] involves a transfer of an interest in land, it must be created by writing * * *."

Clearly, an oil and gas lease is "an interest in land" within the meaning of § 48-316.

Defendants were entitled to the notice which the statute directed that they be given if such notice was within the power of the public officials to give; and those in authority were obligated to exercise due diligence to comply with the statute, whether they deemed it to be directory or mandatory. Such diligence required at least an effort to send the notice by registered mail to the address shown in the recorded lease.

The provision for the barring of damage claims, § 48-317, does not become operative against a person who claims lands or interests therein until the required notice has been given to him or until there has been a reasonable effort to inform him that his property rights are to be affected. Inasmuch as defendants received no such notice, and by this suit attempted to protect their rights, we think it is equitable that they now be considered to have received the "Notice of Location of Road" in question as of the date of the issuance of mandate herein; and that they thereafter be permitted to file claim for damages and have determination thereof in the manner provided in Art. 3, c. 48, W.C.S. 1945. It is so directed.

Reversed with directions.