Town of the City of Newcastle and State Highway Commission of Wyoming,

*Appellants* (*Plaintiffs below*)

vs.

E. H. Toomey, Toomey's Mills, Inc., Charles F. Martens and May O. Martens,

*Appellees* (*Defendants below*)

(No. 2833; August 26th, 1958; 329 Pac. (2d) 264)

434

For the appellants the cause was submitted upon the brief of Thomas O. Miller, Attorney General, Robbert L. Duncan, Special Assistant Attorney General, both of Cheyenne, Wyoming, and Thomas L. Whitley of Newcastle, Wyoming, and oral argument by Mr. Duncan.

For the appellees the cause was submitted upon the brief and also oral argument of Edward S. Halsey of Newcastle, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

436

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

In this action the Town of the City of Newcastle (hereafter called the town or Town of Newcastle) and the State Highway Commission of Wyoming seek to recover from the defendants for a right of way a strip of land 80 feet in width extending from east to west along the lands claimed by E. H. Toomey and Toomey's Mills, Inc. (herein called the Toomey land), and along the lands claimed by Charles F. Martens and May O. Martens (hereafter called the Martens land) pursuant to an attempted eminent domain proceedings by the town. The length of the strip of ground over the Toomey land does not appear in the record but according to the map seems to be approximately 400 feet in length. The length of the strip of ground along the Martens land, which is west of the Toomey land, also does not appear, but seems to be of greater length than that along the Toomey land. The court declined to award the strip of land 80 feet in width to the plaintiffs except a strip along the center thereof, being 25 feet in width which is paved and has a black top, plus an additional six feet along the Toomey land, being three feet on each side of the paved street by reason of

a drain along each side of the paved street. From that judgment the plaintiffs have appealed to this court.

The basis of the claim of plaintiffs is alleged to be as follows: On April 26, 1923, the Council of the Town of Newcastle adopted a resolution to locate a public highway across the strip 80 feet in width, described as follows:

"A strip 80 feet wide, the center line of which is described as follows: Starting at a point which is ten feet south of the West quarter corner of Section 29, Township 45 North of Range 61 West, 6th Principal Meridian, which is at Station 1426 plus 70 of the State Highway Survey, thence north 88 degrees 43 minutes east 720 feet to the curve of 573.7 feet radius, thence around the curve to the left 220.5 feet to the end of the curve, thence North 66 degrees 40 minutes east, 1093.3 feet, to a curve of 1432.7 feet radius; thence around the curve to the left 151.3 feet to a point on Warren Avenue, of the Town of the City of Newcastle, Wyoming at the end of the curve to a point which is Station 1448 plus 63 of the State Highway Survey and forty feet south of the north line of Warren Avenue."

The resolution stated further that all objections thereto and claims for damages should be filed in writing with the town clerk of the town on or before the 26th day of May, 1923, or that such highway would be established and located. The names of the owners of the property were not mentioned. It appears that this resolution was duly published in the News Letter Journal, a newspaper published at Newcastle, Wyoming, for four consecutive weeks, namely on May 3, 10, 17 and 24, 1923. The description contained in this resolution and the notice thereof is the same description contained in the petition filed by the plaintiffs herein as having been acquired by the town as a right of way in 1923. On June 4, 1923, a meeting of the city council of the town was held and the matter of establishment of a highway was considered at that meeting. The minutes of that meeting state that due notice of the establish-

ment of the highway had been given by publication; that no objections thereto, and no claims for damages by reason thereof, had been filed. Thereupon the highway was declared to be established by metes and bounds. Again the names of the owners of the property were not mentioned. These minutes of the council appear in Plaintiffs' Exhibit 2, while the notice of location of the highway heretofore mentioned appears as Plaintiffs' Exhibit 1. The actual route for a highway attempted to be established on June 4, 1923, and set forth in Plaintiffs' Exhibit 2, was an altogether different route from that mentioned in the notice which was published. This matter will be mentioned again hereafter.

No notice other than by publication in a newspaper was given of the foregoing proceedings, although the addresses of the owners were known. The Martens land at that time was owned by the Lincoln Land Company, and its known address (of record) was Lincoln, Nebraska. The Toomey land at that time was owned by D. J. Toomey Produce Company, and its known (record) address was Spearfish, South Dakota. In addition the latter company had a resident manager at Newcastle, but no notice was given to him personally. It is stipulated herein that no compensation was ever paid to the owners of the property for the right of way herein claimed.

Soon after the foregoing proceedings, a paved street 25 feet in width was constructed along the center of the claimed strip of 80 feet by the State Highway Department. That was done by the acquiescence of D. J. Toomey Company, and no objection appears from the Lincoln Land Company. The strip mentioned at that time was all within the town limits, but part of it—apparently all or the major portion of the Martens land

—was by proper proceedings excluded from the town limits in 1951, and it is this excluded portion of the strip which is claimed herein by the State Highway Department, while the strip within the boundaries of the town is claimed herein by the town.

Defendants and their predecessors in title had adverse possession of their respective lands since 1923, excepting the paved street and road above mentioned (plus six feet along the Toomey land). Business properties were placed thereon by defendants south of the paved street, all to the knowledge and without objection of the plaintiffs. Plaintiffs had peaceable possession since 1923 only of the paved street and road along with the drain above mentioned.

1. The question before us is as to whether or not the court erred in limiting the right of way for a street and road as above mentioned, namely to 25 feet occupied by the paved road (plus six feet for drain along the Toomey land). We think not for the reasons hereafter mentioned. In the first place the attempted condemnation above mentioned by the town was invalid. It is an elementary rule that towns and cities have only such powers as are granted to them either expressly or by implication. Whipps v. Town of Greybull, 56 Wyo. 355, 109 P.2d 805, 146 A. L. R. 596.

We find no statutory provision which grants to any city or town any power to exercise the power of eminent domain by resolution or ordinance adopted by a town or city council. The Town of Newcastle, we take it, is a town under the statutes of the State of Wyoming. Section 29-430, W.C.S. 1945, subdivision 22 relating to towns, provides that the town may "take private property for public use, in such manner as may be provided by law". Counsel for appellants herein claim that the special provisions relating to condemnation

proceedings by a county, namely § 48-307, W.C.S. 1945, and subsequent sections, are the statutory provisions to be followed by a city or town. That is not true. The county is a subdivision of the state entirely different from a town or city. The only provision which is applicable is § 3-6001, W.C.S. 1945, which provides:

"The state, the counties and each municipal corporation, shall have the power to purchase or acquire by condemnation, any real estate, including streets, alleys, or public highways, as sites for public buildings, or for any other necessary public purpose, and to take therein the fee simple absolute, which power of condemnation shall be exercised in the manner prescribed by law for the condemnation of real estate by railroad corporations. Proceedings in condemnation as aforesaid shall be conducted in the name of the state, county or municipal corporation, as the case may be, and by the attorney general, when for the state; the county attorney when for the county, and the municipal attorney, when for a municipal corporation."

Turning then to the provision relating to condemnation by railroad companies, we find that § 3-6103, W.C.S. 1945, states that whenever such corporation desires to acquire property by condemnation, it must file a petition in the district court of the county where the real property or any part thereof is situated. Section 3-6104, W.C.S. 1945, provides the essentials of the petition. It must contain a specific description of the property sought to be taken, state the necessity for the appropriation, the name of the owner of each parcel, if known, or if not known, a statement of that fact. It must give the names of all persons having or claiming an interest, legal or equitable, in the property, so far as the same can be ascertained. Section 3-6107, W.C.S. 1945, provides that ten days' notice of the intended filing of the petition must be given to the owners or persons interested in the property, the notice to be a personal notice, if given in this state. Section

3-6108, W.C.S. 1945, provides that when a person having an interest is unknown or his residence is beyond the state, or is unknown, notice by publication may be given. Section 3-6114, W.C.S. 1945, provides that if the court determines that the property should be condemned, it must appoint commissioners to determine the compensation to be paid to the parties interested. That requirement is made whether a claim for damages is filed or not. The foregoing permission as to notice by publication must be construed in connection with other sections of our statute which provides as to what must be done when notice by publication is permitted. Section 3-1102, W.C.S. 1945, provides that an affidavit must be filed that the case is one proper for publication of notice. Section 3-1101, W.C.S. 1945, states that if service by publication is made and the residence of the defendant is known, it must be so stated in the publication and that after the first publication the party making the service shall deliver to the clerk copies of the publication with the proper postage and the clerk shall mail a copy to each defendant, directed to his residence named therein, and make an entry thereof on the appearance docket. It appears herein by stipulation of the parties, as already stated, that the residence of the owners of the property herein involved in 1923 was of record and hence was known.

It is readily seen that proceedings of the nature above outlined give reasonable protection to the parties interested and property owners. Proceedings before a town or city council, and notice thereof without even giving any names, is apt to give no protection at all, especially to nonresidents. In any event, as we stated in State e xrel. State Highway Commission v. Stringer, Wyo., 310 P.2d 730, 732: "We also bear in mind that strict construction is almost universally required in statutory condemnation actions." The Town of Newcastle had no power to condemn the land herein in-

volved in the manner attempted. The action of its town council was totally void and of no force and effect. Furthermore, in the case of State ex rel. State Highway Commission v. Stringer, supra, at 310 P.2d 732, we called attention to the decision of the Supreme Court of the United States in Walker v. City of Hutchinson, Kans., 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178, wherein it was held that notice in an eminent domain proceedings given by publication in a newspaper alone is not due process of law if the names and addresses of the owners of the property are known, as is true in the case at bar. The case of Miller v. Hagie, 59 Wyo. 383, 140 P.2d 746, is not contrary thereto. We called attention in that case to North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 219 P. 561, affirmed 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953, wherein we stated that it was not necessary in order to constitute due process of law that the property owner be notified of every step of the proceedings provided that at some stage thereof he had full opportunity to present his case to an impartial tribunal. In the case at bar, the property owners had no opportunity at any time to present their case, and hence, we must hold that there was no due process of law permitting plaintiffs to claim a right of way of 80 feet as in the case at bar.

2. Appellants contend that they acquired the full 80-foot width of the right of way by virtue of use of a portion thereof. Their theory is that they acquired the paved road of 25 feet in width by prescription; that they have color of title to the 80-foot strip by reason of the condemnation proceedings of the town council and that, hence, they are entitled to all of the 80-foot strip. They cite us to 25 Am.Jur. Highways § 37, p. 360; Note, 2 Ann. Cas. 973, 974; 4 Tiffany, Real Property, 3rd Ed., § 1218; and also some cases. The rule to which appellants refer is also stated in 39 C.J.S. Highways § 20, p. 939, where it is stated:

"A qualification of the general statement that the width of a prescriptive highway is measured by the actual user exists where a highway is acquired by prescription under color of defective proceedings to establish the same. In this event the width of the highway is ordinarily the width of the highway so attempted and intended to be established * * *."

In 1 Elliott, Roads and Streets, 4th Ed., § 193, the author, after stating the general rule that the servitude is measured by the use, proceeds to state as follows at p. 233:

"* * * but if there were defective proceedings, and the use was under color of the claim supplied by them, then the extent of the easement should generally be measured by the claim exhibited by the proceedings and by them intended to be established. This is in strict accordance with the elementary principle of the law of real property, which declares that, where there is color of title, and possession of part is taken under the claim of title, it will cover the whole, but that where there is no color of title the right will not extend beyond the actual possession, the pedis possessio. * * *" The author, however, has some doubt whether this rule applies in all of its strictness to highways and cites a number of cases in that connection.

It behooves us then to examine the question as to whether or not plaintiffs and appellants have color of title as they contend. In view of the fact that the Town Council of Newcastle had no power whatever to establish a street or highway by resolution or ordinance, its proceeding is void on its face, just as an instrument or document may be void on its face. There is a diversity of opinion among the courts as to whether or not a deed void on its face constitutes color of title. In 2 C.J.S. Adverse Possession § 72 d, p. 592, it is said: "Where, however, the deed is void on its face, some authorities deny that it can constitute color of title, although other authorities hold that a deed void on its face may confer color of title, especially where the

ground of invalidity would be apparent only to one learned in the law."

See also 2 C.J. 176. 4 Tiffany, Real Property, 3rd Ed., p. 460, states: "There is considerable question as to whether a conveyance void on its face constitutes 'color of title'". The author cites a number of cases holding that such conveyance is not color of title, among others, Mathews v. Blake, 16 Wyo. 116, 92 P. 242, 27 L.R.A.N.S. 339. In that case this court held that a tax deed not acknowledged as required by the statute is void on its face and not admissible in evidence to prove title or right of possession in the grantee. In Tiglao v. Insular Government of Philippine Islands, 215 U.S. 410, 30 S.Ct 129, 54 L.Ed. 257, it was held that a wholly unauthorized grant of land in the Philippine Islands by subordinate Spanish officials, showing its invalidity on its face, cannot serve as the basis of a prescriptive title. In Riverside County v. Leslie, 109 Cal.App. 238, 292 P. 981, it appears that a petition for a road 100 feet in width was presented to the Board of Supervisors of San Bernardino County. The petition was granted by an order of the board and a description inserted in the order. However, a number of requirements by the statutes were not observed and the court accordingly held that the board was without jurisdiction to establish the road. Only 20 feet had actually been traveled and as held by the court the road could not be extended to a width of 100 feet. Said the court at 292 P. 984, among other things, after referring to certain requirements of the statutes:

"Not one of the foregoing acts being performed, it cannot be said that the county gained even a shadowy right to a 100-foot strip through the land of a man wholly ignorant and unadvised of the initial proceedings had. It must be held, therefore, that Beaumont avenue was not established 100 feet wide by any legal action of the board of supervisors of San Bernardino

county. It must also be held that, said county having failed to institute suit for the right of way, or pay for same, as provided by the code, no 100-foot highway has been created by use and maintenance under color of right created by the ineffective action of the board of supervisors. * * *"

We think we should follow the general principle announced in the foregoing case. As a matter of fact, the case before us is stronger than the California case. In that case the board of supervisors had actual authority to commence the proceedings for the creation of a highway while in the case at bar, as heretofore stated, the Town Council of Newcastle had no jurisdiction whatever to establish the street which they attempted to establish by resolution.

There is a further reason for this conclusion. As heretofore stated, the resolution to create the street contained a description which is not in conformity with the description in the order finally designating the street as shown by Plaintiffs' Exhibit 2. That appears by the testimony of James T. Fletcher, a surveyor and engineer. His testimony on this point is as follows:

"Q. Mr. Fletcher, here is Plaintiffs' Exhibit No. 2, which is a certified extract of minutes of the meeting held by the Town Council for Newcastle on June 4th, 1923, and in there there appears a description. Would you look at that? (Witness does so.)

"Q. Are you familiar with that description, Mr. Fletcher? A. Yes, I am.

"Q. Have you ever platted out or followed the lineway as described in this plat and boundary description? A. Yes, I have.

"Q. Referring to Plaintiffs' Exhibit No. 12, does that line follow the line following within the portion covered

in yellow and blue on Plaintiffs' Exhibit No. 12? A. No. it does not. [Exhibit 12 shows the paved road and 80-foot strip claimed.]

"Q. Mr. Fletcher, here is a blue lead pencil, referring again now to Plaintiffs' Exhibit No. 2, would you trace the approximate line, which is described in Plaintiffs' Exhibit No. 2, on Plaintiffs' Exhibit No. 12? (Witness does so.)

"Q. Now, Mr. Fletcher, you have traced the line in blue on Plaintiffs' Exhibit No. 12, is that the line which runs generally down what is marked Warren Street? A. Yes, it does."

This testimony was corroborated by another witness. The line actually ordered established by the city council skirts along part of the northern edge of the Toomey land, then leaves this land and away from the line actually used and goes along in a northwesterly direction on so-called Warren Street and never touches the Martens land excepting at one point in the extreme west. In view of this fact, the plaintiffs never acquired any kind of a title to the 80-foot strip of land now claimed as a street and road aside from that actually used. That is clearly shown in the case of Sweet v. Irrigation Canal Co., 198 Or. 166, 254 P.2d 700, 706, 256 P. 2d 252, where the court cites from a previous case of Bayard v. Standard Oil Co., 38 Or. 438, 63 P. 614, 615, as follows:

" '* * * Colorable title forms the basis upon which a prescriptive right to the full width of the defined limits is founded. The next step in logical course of establishment is an entry and a user with reference to it, and, when this has been continuous and uninterrupted and adverse for the statutory period, then has the right ripened into a valid title in the public. It would be fallacious reasoning, therefore, to indulge a presumption that a road as actually worked and used by the public was within and upon the way as attempted to be lo-

cated, and thence to conclude that its width must be measured by that designated in the void proceedings. It must be proven that the road as used falls within the colorable title, and, when this is done, the other condition follows; that is, the possession is extended constructively to the entire designated width, or occupancy of a part is then equivalent to an occupancy of the whole. Where the highway as used runs *without the exterior lines* of that as surveyed and attempted to be located and established by lawful authority, the width must then be determined by the rules hereinbefore ascertained [for actual use], and the ineffectual proceedings can have no bearing whatever upon the subject.' " (Emphasis supplied.)

It follows from what has been stated that the contention of appellants here discussed must be overruled.

3. Appellants contend that the testimony shows that E. H. Toomey testified that he did not occupy or claim any lands north of the northern edge of the pavement. Like evidence appears on the part of defendant Charles Martens. Appellants accordingly claim that they should have been awarded all the lands north of the paved road. The trouble is that appellants established no title whatever to any land except the paved road and the drain above mentioned, and the contention here made must accordingly be overruled.

It follows from what we have said that the judgment of the trial court should be and is affirmed.

Affirmed.