Frank A. WOOLLEY and Mildred H. Woolley et al., Appellants (Defendants below),

v.

STATE HIGHWAY COMMISSION of Wyoming, Appellee (Plaintiff below).

Frank A. WOOLLEY and Mildred H. Woolley, Petitioners,

v.

The Honorable Robert CHRISTMAS, Judge of the District Court, Third Judicial District, and the State Highway Commission of Wyoming, Respondents.

Nos. 3194, 3198.

Supreme Court of Wyoming.

Dec. 24, 1963.

P. W. Spaulding, Evanston, and Clifford L. Ashton and Howard L. Edwards, of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for appellants and petitioners.

John F. Raper, Atty. Gen., Glenn A. Williams, Asst. Deputy Atty. Gen., and Dean W. Clark, Sp. Asst. Atty. Gen., Cheyenne, for appellee and respondents.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

The matters here result from two eminent domain proceedings commenced by the State Highway Commission for the purpose of acquiring certain real property rights deemed necessary for the construction, maintenance, and operation of a segment of Interstate Highway 80 between Evanston, Wyoming, and the Wyoming-Utah State line. Mr. and Mrs. Woolley were the owners of lands sought to be taken or affected and complain of the trial court's determination that the commission was entitled to take their property for the purposes stated. Because common questions of law and fact are involved, the proceedings, by stipulation of counsel, have been consolidated. No. 3194 is an appeal from an order of conveyance entered by the trial court vesting title to certain of the Woolleys' lands and rights in the commission, and for convenience we refer to it hereafter as the first taking. No. 3198 is an action in prohibition instituted here by the Woolleys to prevent the trial court from proceeding further in what we shall refer to as the second taking.

A general outline of matters appearing in the record shows that existing U. S. Highway 30 runs in an easterly and westerly direction between Evanston, Wyoming, and

the Wyoming-Utah border. The lands owned by the Woolleys are adjacent or near said border on the Wyoming side and consist of a tract of approximately 3.5 acres lying immediately north of the right of way of said Highway 30 and a tract of approximately 15 acres lying immediately south of said right of way. The original plan of the commission for the proposed interstate highway for the particular area here involved was to construct a limited access facility highway on the route of said Highway 30 to consist mainly of a divided four-lane highway, together with a service road. As disclosed by the map attached to the petition in the first taking, access control lines 440 feet apart were established on the north and south as the outer limits of said facility, and for such purposes the commission deemed it necessary to acquire title to all of the lands embraced within the access control lines and also to acquire rights of ingress and egress to lands adjacent but outside the control area. In this connection the right of way of Highway 30 was to be utilized and wherever possible paved portions of said highway were to be retained as a service road but, even so, in order to carry out the commission's proposal, additional lands and property rights were required. That is how the Woolleys became involved, and in the first taking the commission sought to appropriate 0.9 acres of the Woolleys' tract fronting on the north side of Highway 30, together with rights of ingress and egress to the remainder of the said 3.5 acres, and to appropriate 1.8 acres of the Woolleys' tract fronting on the south side of Highway 30, together with rights of ingress and egress to the remainder of the said 15 acres.

Subsequent to the first taking it is apparent that a change in plans for the construction of the proposed facility occurred. The commission decided to incorporate into the project provision for weigh or check stations on each side of the divided traffic lanes, with acceleration and deceleration lanes to and from said stations connecting directly with the said through-traffic lanes. In addition, provision was made for facilities to be used for public parking and which would also be used by the highway departments of both Wyoming and Utah for parking and turning movements of maintenance and snow-removal equipment, and maintenance operations in general. To accommodate these additional needs the commission determined that more land would be required, and as a result initiated the second taking some seven months after the first taking. Again both tracts of the lands of the Woolleys became involved, and the commission sought to take an additional 0.7 acres out of the north tract and an additional 2.2 acres out of the south tract. With this additional taking the outer limits of the proposed access facility highway were extended from 440 feet to a width of approximately 660 feet.

The principal contention of the Woolleys is that the commission failed to establish its right to acquire a right of way in excess of 300 feet in width as limited by the provisions of § 24–37, W.S.1957, as amended by Ch. 36, S.L. of Wyoming, 1961, and that in any event the commission was wholly without authority to acquire lands for the purpose of constructing a check station and the facilities related thereto.

Inasmuch as the commission also invoked the provisions of § 24–37 as a part of its authority for the taking, we set forth the pertinent provisions thereof, which state:

"* * * the commission shall have the authority to acquire the same [rights of way] by purchase or gift, and if such rights of way cannot be so acquired, the commission shall have the authority to acquire rights of way for state highways up to three hundred (300) feet in width, and where greater width is necessary for parking facilities, maintenance, excavations, embankments or deposit of waste materials to also acquire such greater widths as is reasonably necessary therefor, by condemnation proceedings * * *."

In considering the contentions of the parties related to the above, it is desirable first to mention the matter of the pleadings. Under the statutory procedure prescribed for the taking, certain essentials are required for a petition in condemnation, such as a specific description of the property; the interest or right to be taken or adversely affected and the names of persons having an interest therein; the work to be constructed thereon; the use to be made of the property acquired; the necessity for the taking; and a prayer for appropriation and appointment of appraisers. Section 1–757, W.S.1957. Then § 1–766, W.S.1957, requires that all pleadings in the proceeding be verified and although counter pleadings to the petition are not required, it is clear that such pleadings are contemplated, at least on the questions of authority, public purpose, use and necessity [1] for the primary reason that unless "controverted by counter pleadings" the allegations of the petition "shall be deemed to be true."

With unimportant exceptions, the commission's petitions in both takings were identical in form; were verified; and contained all of the matters necessary to invoke the jurisdiction of the court. It was alleged that by resolution duly made the commission had determined to construct as an access facility highway the segment of Interstate 80 above described and directed that condemnation proceedings be commenced for acquisition of necessary right of way. With respect to use, an important allegation here, it was alleged "That the lands, lots, grounds and real estate described * * * are to be appropriated for the public use, to wit, the building, constructing, maintaining, using, excavating, embanking and depositing waste earth, and any other use necessary and essential for the construction, maintenance and use of said access facility highway." No question was raised by the Woolleys concerning the petitions, and no responsive pleadings with respect thereto were filed prior to or at the time of the preliminary hearings before the trial court to determine the right of the commission to make the appropriations for the use proposed and the necessity therefor. It will be noted that the foregoing allegations with respect to use were substantially in the language of statutory requirements, particularly those allegations invoking exceptions to the limitation of § 24–37; and in a proceeding of this nature that is sufficient. 29 C.J.S. Eminent Domain § 254, p. 1223. Under the circumstances, the regularity of the proceedings was prima facie established at the time of the preliminary hearings.

It is true that said petitions made no mention of proposed parking facilities for the project or the proposed construction and operation of check stations and related facilities. Nevertheless, at said hearings the commission proceeded to offer proof of the proposed use and necessity for the appropriations and for such purpose produced as a witness Edward H. Crow, its resident engineer stationed at Evanston, Wyoming. At the hearing on the first taking the witness stated that he was personally familiar with the lands involved, the location of the highways, and the plans and specifications for the proposed project; and that the map attached to the petition reflecting these matters was prepared by him and by others under his direction from actual surveys. He also testified that the project, as a part of the Interstate System, was required to be an access control facility and that there would be no access between the Wyoming-Utah border and an interchange to be located near Evanston, Wyoming; that such control was essential for this type of highway; that the property rights sought were necessary for such purposes; and that other routes had been investigated but the line selected was determined "To be the best line."

At the second hearing the witness identified Exhibit A as the design of the project as then proposed for the area involved, which was jointly prepared by the highway

1. Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, rehearing denied 122 P. 900.

departments of Wyoming and Utah from information and surveys furnished by him and by others under his supervision. The exhibit reflects the change in plans and specifications for the area from the plans and specifications of the first taking and discloses the inclusion in the project of the check station facilities and parking facilities above described. It also shows the additional lands sought to accommodate the revised plans, and the witness stated that such lands were necessary for the project. Concerning the inclusion of the check station, the witness said that such facilities were necessary for construction and maintenance of the highway and that this in turn, from a "traffic safety standpoint," made necessary additional parking facilities "off the main line." We have heretofore described the proposed dual purposes to be served by the parking facilities. He also said that contingent upon the needs developed by actual construction of which he would be in charge, there could be need of some of the additional land for deposit of waste earth and for excavation, principally on the south side of the project, and that all of the matters to which he testified were interrelated with the project as a whole and could not be separated one from the other. Finally, the witness gave it as his opinion that the proposed locations of the check stations and parking facilities near the State line were the most desirable that could be selected and were also the most feasible from an economic standpoint, for the reason that the commission had already acquired land and rights that would be utilized along with the additional lands sought to be taken.

 Although as stated, no responsive pleadings were filed at the time by the Woolleys, their counsel appeared and participated in both preliminary hearings and extensively cross-examined the witness Crow. At the first hearing no testimony was offered by the Woolleys, but at the second hearing Mr. Woolley was called as a witness. He stated that at the time there

were no improvements on the 15-acre tract fronting on the south side of Highway 30 but that they had some elaborate plans to construct on it a motel, truck stop, and service station facilities. Also, that he had received some assurance from employees of the commission that ingress and egress on both sides of the proposed highway would be allowed him to and from his property. However, he then said that such plans were never consummated for the reason that he was requested by the highway department to delay them, and in the meantime the Federal Bureau of Roads changed its regulations and "didn't allow these spurs, ingress-egress" thus depriving him of any direct access after the taking. In passing, we should state that it is difficult to perceive the materiality of the foregoing testimony of Mr. Woolley on the questions to be determined at the preliminary hearing. In Town of Clearmont v. State Highway Commission, Wyo., 357 P.2d 470, 481, we referred to the rule that owners of property adjoining an established highway have no property right in the continuation or maintenance of the flow of traffic past their property. Consequently, although such proposed use of the land for building purposes might have some relevancy on the issue of its "most available use" [2] at the time of the taking in connection with the matter of compensation, such evidence has no bearing on the regularity of the taking. The only possible relevance of the testimony of Mr. Woolley would seem to relate to the question of good faith on the part of the commission; but even assuming that employees of the commission were authorized to consent to a right of ingress and egress for the Woolleys to the new highway, the testimony still falls of its own weight on such question for the reason that the plans of the Woolleys were thwarted by a change in requirements of the Federal Bureau of Roads and not by any wrongful action on the part of the commission.

 On such a state of the record the Woolleys undertake a heavy burden to

2. State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, 869.

demonstrate an irregularity within the scope of this court's power to modify or set aside the determination of the commission. In Town of Clearmont v. State Highway Commission, supra, 357 P.2d at page 479, we took cognizance of the almost unanimous rule that, absent statutory provisions, the courts are without jurisdiction to interfere with the commission's exercise of lawfully delegated authority to determine the necessity for and location of public highways, and on the basis of such rule we held that under Wyoming law this court was without power to inquire into the location selected for the highway in question. That is not to say, of course, that the courts are without inherent power to inquire into such matters as usurpation of power, fraud or conduct tantamount to fraud; nor can it be said that under our procedural statutes a landowner, where issues are properly joined, may not obtain the aid of a court to inquire into the use of and the necessity for the lands sought to be appropriated. Such is the very purpose of § 1–757 and § 1–762, W.S.1957, which in part provides that the trial court at the preliminary proceedings "shall hear the proofs and allegations of all parties interested, touching the regularity of the proceedings." But again the court's authority is not unlimited. If the determination of the commission is within its authority, has some reasonable basis, and is not arbitrary, capricious or discriminatory, the decision of the commission must stand. Colorado Interstate Gas Co. v. Uinta Development Co., Wyo., 364 P.2d 655, 657; State ex rel. Sharp v. 0.62033 Acres of Land in Christiana Hundred, New Castle County, 10 Terry 174, 49 Del. 174, 112 A.2d 857, 859; State v. North Star Concrete Company, Parcel Channel Change, 265 Minn. 483, 122 N.W.2d 118, 121; City of Trenton v. Lenzner, 16 N.J. 465, 109 A.2d 409, 413, certiorari denied 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757.

While we do not consider that the Woolleys properly raised any issue under the foregoing rule at either preliminary hearing, perhaps it is not inappropriate briefly to comment on their position as reflected by their answer to the first taking, filed subsequent to the hearing. It was therein alleged, inter alia, that the taking "is a scheme or subterfuge to unlawfully widen the right of way of said highway so as to be in excess of 400 feet and not for any purpose permitted by law." Needless to say, under the wording of the statute that permits exceptions to the limitation of a 300-foot right of way, and the prima facie showing by the commission of compliance therewith, the Woolleys had the burden to make some affirmative showing that the commission's proposal was "a scheme or subterfuge" to invoke the exceptions. Lacking in this, and which as pointed out is the fact, and aside for the moment from the matter of check stations, it is clear that the takings did not violate the statute as to the width of the right of way; and it is clear also that on the record before us no violation is shown of the fundamental rule that no more property rights shall be taken than those reasonably necessary for public use.

Turning now to the inclusion of check stations in the project, it is strenuously urged that the commission was wholly without authority to appropriate land for this purpose. It is true that such purpose is not specifically named in any grant of authority to the commission and counsel for the Woolleys invoke the general rule, which we recognized in State ex rel. State Highway Commission v. Stringer, 77 Wyo. 198, 310 P.2d 730, 732–733, and Town of City of Newcastle v. Toomey, 78 Wyo. 432, 329 P.2d 264, 267, 76 A.L.R.2d 525, that strict construction is almost universally required of statutory grants of the power of eminent domain and will not be enlarged by implication.

But we are not here dealing with an ordinary project for the construction and establishment of State highways. In cooperation with the Federal Government and the highway authorities of Utah, the commission has undertaken to construct, maintain, and operate a limited access highway, as a segment of the National System

of Interstate and Defense Highways in keeping with standards designed to assure adequate facilities for the safe, free flow of traffic, deemed by Congress essential in the national interest and of critical importance,[3] and by our own legislature as "necessary for the immediate preservation of the public peace, health, and safety, and for promotion of the general welfare."[4] Counsel should therefore not overlook an earlier pronouncement by this court in Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, 682, rehearing denied 122 P. 900, that if a statute has in view an "object of great public utility" it "is entitled to a liberal interpretation in order, if possible, to carry out the evident legislative purpose." To the same effect is Nichols' statement that such a statute "should be enforced in such a way as to effectuate the purpose for which it was enacted." 1 Nichols, Eminent Domain, § 3.213(2), p. 234 (3d Ed.).

A further rule to be kept in mind is that stated in Stringer v. Board of County Commissioners of Big Horn County, Wyo., 347 P.2d 197, 200, wherein it was said:

"It is a fundamental principle of statutory construction that to ascertain the meaning of a given law all statutes relating to the same subject or having the same general purpose shall be read in connection with it as constituting one law. They must be construed in harmony, else the law of the State would consist of disjointed and unharmonious parts with a conflicting and confusing result. * * *"

Thus, in conjunction with § 24–37, we turn to the Access Facilities Act, Tit. 24, Ch. 5, W.S.1957, which is similar to Acts of most of our sister states, and specifically relates to the type of highway here proposed.

We have already made mention of the purpose clause of the Act, but other provisions are of significance. Section 24–72 thereof authorizes the commission to cooperate with the Federal authorities and other State authorities in the construction and maintenance of such highways and "to plan, designate, establish, regulate, * * * maintain, and provide access facilities for public use wherever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities * * *." Section 24–75 thereof authorizes the commission to acquire property for "access facilities and service roads" by condemnation "in the same manner" as property for other types of highways is acquired. Because of the obvious purpose to permit the commission to cooperate with the Federal authorities on such projects and the provisions of § 24–40, W.S.1957, which give Wyoming's assent to acceptance of benefits of any Act of Congress "which shall grant or authorize aid for the construction, improvement, maintenance or repair of public roads or highways," it is necessary and proper briefly to refer also to applicable provisions of the Federal-Aid Highway Act (23 U.S.C.A., Ch. 1 (1927) ). To do so is also in keeping with established authority. State ex rel. Moulton v. Williams, 207 Tenn. 695, 343 S.W.2d 857, 858–859.

Section 101(a) of the Federal-Aid Highway Act defines maintenance as "the preservation of the entire highway, including surface, shoulders, roadsides, structures, and such traffic-control devices as are necessary for its safe and efficient utilization." Section 106(a) requires the States to submit plans and specifications to the Secretary of Commerce and § 109(a) admonishes the Secretary not to approve the same unless the proposed facility adequately meets present and future "traffic needs and conditions in a manner conducive to safety, durability, and economy of maintenance," and "designed and constructed in accordance with

---

3. 23 U.S.C.A. § 102 (1962 Supp.); and S.Rep. No. 1928, Vol. 2, U.S.Code Cong. and Ad.News, 85th Cong., 2d Sess., pp. 3942, 3944 (1958).

4. Section 24–70, W.S.1957. See also Town of Clearmont v. State Highway Commission, supra.

standards best suited to accomplish" the objectives of the Act. Section 109(b) provides in part "The right-of-way width of the Interstate System shall be adequate to permit construction of projects on the Interstate System up to such standards." Section 127, coupled with our own statutory provisions regulating the size and width of vehicles, is particularly pertinent to the question before us. Under this section the Secretary is prohibited from apportioning funds to the States which do not restrict the size and weight of vehicles to the limits therein set forth. Clearly, such special treatment by Congress and by our own legislature indicates the necessity for control of the size and weight of vehicles in the interest of the objectives to be achieved.

■ Concerning authority for the proposal to include check stations in the proposed project, let us first consider the impact of the Federal Act with respect thereto. Such Act, as is true of our own statutes, makes no special mention of check stations, but as seen, it does require the right of way for the Interstate System to be of a width adequate to accommodate construction in keeping with standards "conducive to safety, durability, and economy of maintenance" (§ 109, supra); and is to include such facilities, structures and traffic-control devices "as are necessary for its safe and efficient utilization." Section 101(a), supra. Recalling the necessity for approval by the Secretary of Commerce of the plans and specifications for the project, it has not been suggsted to us that in so doing the Secretary was without power to integrate into the project the facilities proposed, so for purposes here we must presume that the Secretary, under his broad powers, acted properly and within the scope of his authority. North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 219 P. 561, 567, affirmed 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953.

With respect to authority of the commission in the premises, it can be seen that aside from the general authority relating to all highways contained in § 24–37, the legislature by special provisions has also clothed the commission with broad powers in establishing and constructing the type of highway here involved. Care has been taken to make it possible for Wyoming cooperatively to accomplish a necessary and vital public objective. We need not go so far as to hold that such special provisions supersede the limitations of § 24–37, but on the other hand neither should we create a conflict that is needless and unnecessary between our statutory grants of power and the Federal Act.

■ A cursory examination of the Federal Act also discloses a permissive multiple use of lands involved in such a project with the prime purpose of assuring safety and economic maintenance. We think the same is true of the special provisions of our statutes, and even § 24–37 contemplates multiple use by the commission. Under our statutes, if a need is established to subserve one or more of the purposes enumerated as exceptions to the 300-foot limitation, the taking must be sustained. In this connection the record discloses a proposed multiple use by the commission of the lands involved, but just how much each purpose influenced the extent of the taking cannot with any degree of certainty be ascertained. As stated by the witness Crow, all of the purposes are interrelated with the project as a whole and cannot be separated one from the other. So it is clear on the record before us that we could not in any event isolate the lands that are proposed to be utilized for check station facilities and delete such lands from the taking. Nevertheless, we are not disposed to decide the issue on such a narrow ground.

■ Coming quickly to the point, we are of the view that the commission established a need for excess land under the permissive authority of § 24–37. It will be recalled that the need of lands for "maintenance" beyond the 300-foot limitation is an authorized appropriation by the commission.

The term has not been defined by the legislature, as is the case in the Federal Act. Without statutory aid the courts have found

it difficult to define it with exactness. See 26 Words and Phrases "Maintenance" p. 96, et seq. (Perm.Ed.). In some cases it has been given a broad meaning, while in others its meaning has been limited. But there seems to be unanimity of view that the term must be construed in the light of the subject matter with which it is used, and a cardinal principle to be kept in mind is, of course, legislative intent. When that is done there are several impelling reasons for giving a broad meaning to the term. Of first importance is the principle of Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, 682, rehearing denied 122 P. 900, that to do otherwise might well frustrate and render nugatory the power of the commission to consummate the project. Secondly, no undue liberty is taken with the term to bring within its ambit facilities and provisions appropriate to and connected with the preservation of the highway, as well as its repair. We place facilities for control of weight restrictions in that category. And there is a further reason why this should be done.

■ Restriction by the States on the weight and size of vehicles using the Interstate System is a condition precedent to aid under the Federal Act. It would seem incongruous to say that the legislature intended to create a situation whereby it would, by statutory "lip-service," technically qualify Wyoming for a Federal-Aid project and then by force of a general term in another statute so restrict the commission that it could not include within an integrated project on such system facilities necessary to activate the conditions precedent. We will not attribute to the legislature a purpose to bring about such an absurd and unreasonable result if it can be avoided. Texas Co. v. Siefried, 60 Wyo. 142, 147 P.2d 837, 847, rehearing denied 150 P.2d 99.

Thus considering the basic grant of power to the commission to appropriate lands for the type of highway here involved, including lands for maintenance, and in order to effectuate the purposes of the grant, we

hold that authority to include check stations and related facilities as an adjunct to maintaining an integrated project of the Interstate System is necessarily to be implied. Therefore, the commission not having exceeded its authority in this regard and having otherwise established necessity for the lands in question, it necesarily follows that the orders of the trial court in both proceedings must be affirmed.

The commission has filed a motion to dismiss the appeal in taking number one on the ground that the Woolleys waived any right of appeal when they failed to take exceptions to the award of the commissioners as provided in § 1–770, W.S.1957, or to file a petition in error here within 90 days after the confirmation of the report of the court commissioners as provided in § 1–778, W.S.1957. In view of the disposition made of the appeal on the merits, a ruling on the motion is unnecessary. However, the motion does serve to bring into focus possible procedural conflicts existing between the statutes prescribing procedure in eminent domain proceedings and our Rules of Civil Procedure. Under the statutory procedure the appeal would have to be dismissed. Big Horn Coal Company v. Sheridan-Wyoming Coal Co., 67 Wyo. 300, 224 P.2d 172, 174. If our rules are applicable and controlling, it would seem that the order of conveyance entered by the trial court was a final order under Rule 72(a), W.R. C.P., from which an appeal would lie under the provisions of Rule 73, W.R.C.P. We have not heretofore had occasion broadly to delineate the area occupied by our rules in an eminent domain proceeding and the area occupied by the statutory procedure; and as demonstrated by this case, there is lack of understanding among members of the bar. Counsel for the Woolleys have proceeded under Wyoming Rules of Civil Procedure and simply assume that such rules apply. Counsel for the commission assume that any statutory provision regarding procedure controls to the exclusion of otherwise applicable Rules of Civil Procedure. As a result, we are not aided or informed by the briefs in reaching a conclu-

sion on this procedural question. Thus, absent necessity for a ruling and absent cogent authorities, we defer consideration at this time.

In summary, the motion of the commission in No. 3194 is denied; the order of conveyance entered therein by the trial court is confirmed; and the prayer for writ of permanent prohibition in No. 3198 is denied and the alternative writ quashed.